JEWISH CENTER OF MT. VERNON, INC., Respondent, *v.* MT. EDEN CEMETERY ASSOCIATION, INC., Appellant; CEMETERY BOARD OF THE STATE OF NEW YORK, Intervenor-Defendant-Appellant.

Second Department, December 11, 1961.

*Percival E. Jackson* (*Theodore N. Tarlau* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Herbert J. Wallenstein, Paxton Blair* and *Irving Galt* of counsel), for intervenor-defendant-appellant.

*Lesser & Lesser (Harry Lesser, Herbert W. Aronson* and *Henry L. Hecht* of counsel), for respondent.

PETTE, J. This action is one for a declaratory judgment brought by the plaintiff, Jewish Center of Mt. Vernon, Inc., a corporation organized under the Religious Corporations Law of the State of New York, against Mt. Eden Cemetery Association, Inc. (hereinafter called defendant), a cemetery corporation organized under the Membership Corporations Law, to declare binding and enforcible that portion of a written agreement between them, dated December 20, 1939 (hereinafter referred to as the 1939 agreement), which refers to the charges for services rendered or to be rendered by defendant to the plaintiff.

Defendant, in its answer, admits the execution of the agreement as part of a settlement and compromise of differences and disputes between the parties, and sets up two affirmative defenses, to wit, that plaintiff is bound by the charges approved by the State Cemetery Board under article IX of the Membership Corporations Law, as revised by chapter 533 of the Laws of 1949, and that the agreement, sought to be declared valid and binding, contained no provision for its duration and, hence, was terminable at will.

After issue was joined, plaintiff moved to strike out the affirmative defenses and for judgment on the pleadings. Defendant joined in the request that judgment be granted according to the pleadings. By an order of the Supreme Court, Westchester County, dated January 31, 1961, the Cemetery Board of the State of New York was granted leave to intervene, *nunc pro tunc,* as of the date on which it had been served with a copy of the summons and complaint, as an intervening defendant. The Attorney-General appeared for the Cemetery Board without interposing an answer, and argued in opposition to plaintiff's motion and in support of defendant's position. The Special Term granted plaintiff's motion and directed judgment in its favor, declaring the 1939 agreement to be valid and subsisting, and directing specific performance thereof by defendant which " shall render and continue to render to the plaintiff the services set forth in paragraph ' 6 ' of the said agreement dated December 20, 1939, and for the prices as stated in paragraph ' 6 ' of said agreement." Both the defendant and the intervening defendant appeal from the order and judgment entered accordingly.

The facts alleged in the pleadings are undisputed. The complaint shows the facts to be as follows:

Plaintiff is the owner of burial rights in a one-acre plot shown at Plot " L " on the filed cemetery map. The plots and graves in plaintiff's portion of the cemetery are sold by plaintiff to its congregants for their use and the use of members of their families. Prior to December 20, 1939, differences existed between plaintiff and defendant regarding the maintenance of the cemetery grounds and charges therefor. Such controversies were settled and compromised between the parties on December 20, 1939 by delivery of the deed to the plaintiff and by said written agreement. The agreement, after reciting the fact that differences have " existed between these parties regarding the maintenance of the cemetery grounds and charges therefor," the fact that " all of said dissensions, controversies and disputes have now been compromised, settled and adjusted between the parties," then states:

" 6. The following charges for maintenance are hereby established between the parties:

" (a) For the cost of opening a grave $20. and if the lowering device and grass mats are furnished, an additional $20.

" (b) The cost of foundations for monuments are to be charged at $1.00 per cubic foot.

" (c) The party of the second part agrees to cut the grass on the area of plot ' L ' every two weeks during the months between April and October inclusive and the party of the first part agrees to pay to the party of the second part therefor, the sum of $100. per annum, payable November 1st of each year."

The complaint also alleges that defendant has refused to perform the specified services at the agreed prices, and has demanded specified increased prices for the afore-mentioned services. It concludes with a prayer that the 1939 agreement be declared valid and binding, and that defendant be required to continue to render the services at the prices specified therein.

The answer of the defendant pleads two affirmative defenses. For a first complete defense, it sets forth that the defendant as a cemetery corporation and that plaintiff as an owner of burial rights are both subject to the provisions of article IX of the Membership Corporations Law of the State of New York and to the orders and directives of the Cemetery Board established thereby; that the present provisions of said law were enacted in the exercise of the police power of the State and in furtherance of the public policy declared by the Legislature, reflecting the vital interest of the people in the maintenance and preser-

vation of burial grounds and in the proper operation of corporations which own and manage cemeteries so as to prevent the cemeteries from falling into disrepair and dilapidation and becoming a burden on the community; that the defendant is operating at a deficit though it has only one full-time employee — a superintendent, and none of its officers or directors receives any compensation; that the State Cemetery Board has granted defendant the right to increase charges for grave openings and special care, and that the charges presently made by the defendant have been filed with and approved by the Cemetery Board pursuant to section 82 of the Membership Corporations Law; that there are 684 plot owners, other than plaintiff, in the cemetery, all of whom pay the service charges as filed with and approved by the Cemetery Board, and that if defendant were presently to charge or were compelled to charge plaintiff the service charges that were in effect in 1939, the defendant would not even receive the actual cost of the labor necessary to perform such services and the burden of meeting the resulting deficit would devolve upon other plot owners.

The answer further asserts that under the provisions of the Membership Corporations Law, defendant is required to charge and plaintiff is required to pay the service charges as filed with and approved by the Cemetery Board; and that to the extent the agreement of December 20, 1939 purports to fix charges differing from those approved by the Cemetery Board, such provisions are null and void and of no effect in that they are contrary to the provisions of the Membership Corporations Law and to the public policy of the State of New York.

The second affirmative defense alleges that the agreement between the parties contained no provision for its duration and was, therefore, terminable at will — and that defendant has terminated said agreement and, therefore, the agreed prices are of no further force and effect.

Section 82 of the Membership Corporations Law provides that the directors of a cemetery corporation shall make reasonable charges for services in connection with the use and care of cemetery plots and that such charges shall not become effective until approved by the Cemetery Board. It also provides that the directors of the cemetery corporation as well as the Cemetery Board, in determining such charges, shall consider the fair and reasonable expenses required for such services.

With respect to the first affirmative defense (that the charges fixed by the Cemetery Board of the State of New York superseded those specified in the December 20, 1939 agreement between plaintiff and defendant cemetery corporation), the court below

98

in its opinion (30 Misc 2d 1057) said that the operation of a cemetery is impressed with a public purpose, that implicit in any contract relating to a cemetery there is a clause making the terms of the contract subject to future modification; and that if both parties were subject to the provisions of article IX of the Membership Corporations Law, the terms of the contract would be subject to changes ordered by the Cemetery Board. However, the court held that, since plaintiff was organized under the Religious Corporations Law, it was expressly exempted from the provisions of the Membership Corporations Law by section 71 thereof and, therefore, no changes could be made in defendant cemetery corporation's charges by virtue of any order of the Cemetery Board.

As to the second affirmative defense (that the agreement of December 20, 1939 was terminable at will because no period of duration was specified therein), the court acknowledged that generally this is the rule. However, the court held that, since the contract was not an everyday commercial transaction susceptible of variable duration, but one related to the maintenance of a cemetery which public policy requires shall be properly performed in perpetuity, the defendant is under a contractual obligation to render in perpetuity the services specified at the prices stated in the 1939 agreement.

Defendants-appellants first contend that a reading of article IX of the Membership Corporations Law as a whole, in the light of its historical development and the purpose and intent of the law, demonstrates that while it does not apply to a religious corporation which owns a cemetery or to a cemetery *owned by a religious corporation,* it does apply to all owners of burial rights in a cemetery *owned by a cemetery corporation,* regardless of whether the particular lot owner is an individual, a membership corporation or a religious corporation; and that said article IX applies to this plaintiff, not in its capacity as a religious corporation, but as a lot owner in a cemetery owned, maintained and operated by an unrelated cemetery corporation.

Article IX, which consists of sections 70 to 108-a, inclusive, is that part of the Membership Corporations Law that deals with cemetery corporations. It embodies revisions of the law by chapter 533 of the Laws of 1949, enacted by the Legislature upon recommendation by Governor Dewey following an intensive investigation made by the Attorney-General which revealed widespread abuses in the management and maintenance of the cemeteries.

Section 71 of the Membership Corporations Law, as it read prior to its amendment in 1949, provided that " This article,

except as otherwise provided in section ninety-two, does not apply to a cemetery belonging to a religious or a municipal corporation." Thus, the law has always excluded from its operation cemeteries owned by religious corporations. But following the enactment of the revision in 1949, the Membership Corporations Law reads in pertinent part as follows: "§ 71. Application. This article, except as otherwise provided in section ninety-two, does not apply to (1) a religious corporation, (2) a municipal corporation, (3) a cemetery corporation owning a cemetery operated, supervised or controlled by or in connection with a religious corporation, or (4) a cemetery belonging to a religious or a municipal corporation, or operated, supervised or controlled by or in connection with a religious corporation ".

Plaintiff takes the position that the language of section 71, as amended, must be construed literally. However, it is a well-established principle of statutory construction that any enactment is to be read " in the light of its history and purpose " (*Matter of Frasch*, 245 N. Y. 174, 180).

The history and intent of the statute, as amended, may be found in part in Legislative Document (1949) No. 7, which embodies " The Report of the Attorney General on the Subject of Cemeteries," and in Governor Dewey's letter of transmittal to the Legislature. The report (p. 16) discloses a clear intention to exempt only those religious corporations operating a cemetery where rights of burial are restricted to persons of the same religious faith; and in his letter of transmittal the Governor wrote (p. 3) : " Excluded from the scope of such supervision are *cemeteries operated by religious organizations* since such cemeteries have not been diverted to the extortionate and exorbitant gain of private individuals." (Emphasis supplied.) Thus it appears that it was intended to exempt only such religious corporations as owned their own cemeteries, and not those which, together with other organizations or individuals, merely held plots in a cemetery owned by an unrelated cemetery corporation.

In other provisions of article IX of the Membership Corporations Law, there will be found additional evidence that such article was intended to exclude from its operation only such religious corporations as own their own cemeteries. Article IX deals not only with the cemetery belonging to a cemetery corporation, but also with the corporation itself. Thus there are provisions relating to corporate meetings (§ 74), rules and regulations (§ 82), etc., which concern the cemetery corporation that owns the cemetery, rather than the cemetery itself. In order to make clear that the exclusion in section 71 of cemeteries

owned by religious corporations applied equally to the religious corporation which owned the cemetery, the provisions of section 71 were amended to provide that they apply neither to religious corporations nor to the cemetery belonging to the religious corporation. But it is plain from what has been said that the exclusion applies solely to the cemetery owned by a religious corporation, and to the religious corporation as an owner of a cemetery.

This conclusion is also evidenced by the very exception contained in section 71, to the nonapplication of article IX. The section reads " except as otherwise provided in section ninety-two " and the reference in section 92 is to a " religious corporation having charge and control of a cemetery ". Thus the exclusion in section 71 is with respect to cemeteries owned by religious corporations and with respect to religious corporations having charge and control of a cemetery.

Further, subdivision 2 of section 85 which prohibits the purchase of a lot for resale by any person, firm or corporation, adds: " This provision, however, shall not prohibit the sale to its members of lots * * * by a membership or *religious corporation* or unincorporated association or society which provides burial benefits for its members." If section 71 excluded from the operation of article IX a religious corporation which was the owner of burial rights in the cemetery of a membership corporation, there would be no need to have in section 85 an express proviso permitting a religious corporation to resell to its members, since the general prohibition against resale would in no event apply. The fact that at the same time it revised section 71, the Legislature amended section 85 to prohibit resale generally, but to permit resale by a religious corporation to its members, shows that article IX was intended to apply to a religious corporation such as plaintiff, which had acquired burial rights within a cemetery owned and operated by an unrelated cemetery corporation.

Moreover, the limited permission granted by section 85 to a religious corporation to resell to its members is an effective prohibition against a religious corporation reselling to non-members. Such, clearly, is the legislative intent; a legislative objective, which would be thwarted by the holding below, for according to that ruling this plaintiff, as an owner of burial rights in defendant's cemetery, could resell to nonmembers or members alike since it would be free of the prohibition of all of article IX of the Membership Corporations Law, including section 85.

Hence, as plaintiff does not own the defendant cemetery corporation, it is not excluded from the operation of the statute and it is no different from any burial society owning several acres of cemetery land which are sold to its members for their own or their families' interment. It does not operate the cemetery; it does not control it; it does not maintain it. It merely owns — precisely the same as any plot owner — the right of interment and the right to erect suitable monuments and to care for the plot (*Oatka Cemetery Assn.* v. *Cazeau,* 242 App. Div. 415; *Fromer* v. *Shientag,* 16 Misc 2d 953; *Orlowski* v. *St. Stanislaus R. C. Church Soc.,* 161 Misc. 480).

Possessed of those rights of interment only, plaintiff is no different from any other large organization granting similar burial and funeral benefits to its members, and its contract is similarly subject to regulation under the statute. Since it is well settled that the operation of a cemetery is impressed with a public purpose and any contract relating to such operations implicitly contains a clause making it subject to any changes which may be made in the law (*Grove Hill Realty Co.* v. *Ferncliff Cemetery Assn.,* 7 N Y 2d 403; *Diamant* v. *Mount Pleasant Westchester Cemetery Corp.,* 10 A D 2d 404, 410), it follows that plaintiff and defendant are subject to the provisions of article IX, and that the 1939 agreement is subject to the changes ordered by the Cemetery Board.

Plaintiff argues that even if it, as a lot owner, is subject to the provisions of the Membership Corporations Law, nevertheless, to the extent that the law authorizes the Cemetery Board to approve service charges *in excess* of those fixed by an earlier agreement between any lot owner and the cemetery, the statute is unconstitutional and void. Parenthetically it may be stated that this contention was implicitly rejected by the court below since it held that the earlier agreement would be subject to the charges directed by the Cemetery Board were it not for the fact that plaintiff is a religious corporation. The rationale of plaintiff's contention is that the evil at which the statute was directed and, therefore, the sole proper subject of legislative concern, was the making of " excessive overcharges " by cemetery corporations; that from the standpoint of the public policy of this State, it is important only that a cemetery corporation should not charge too much and it is immaterial if it should charge too little or if it should perform services for certain lot owners at less than cost. With this rationalization we cannot agree.

The whole statutory policy and purpose, as enunciated in the declaration of policy which formed the basis for the 1949 amend-

ments to the Membership Corporations Law, refute this claim. There, it was declared that the enactment was intended " To protect the well-being of our citizens, to promote the public welfare and to prevent cemeteries from falling into disrepair and dilapidation and becoming a burden upon the community." (L. 1949, ch. 533, § 1.) Clearly, such a declaration of public policy concerns itself with the prevention and correction of a situation where a cemetery corporation is charging too little for a particular service, so that if it were to be confined to such lower charges the cemetery corporation would not receive the actual current cost to it of the labor necessary to perform that service. Manifestly, if such an unrealistic practice were permitted to continue the cemetery would soon fall " into disrepair and dilapidation " and become " a burden upon the community." Nor is it clear that the deficit could be made up by charging the other plot owners enough to make up the difference, in view of the provisions that in determining the charges consideration shall be given to " the fair and reasonable cost and expense of rendering the services or performing the work " (Membership Corporations Law, § 82, subds. 1, 3).

Accordingly, in view of the evil at which the statute was directed and in view of the public policy of the State, the conclusion follows that the cemetery corporation may not charge either too little or too much for services to be rendered, and that it may not discriminate between lot owners by imposing burdens upon one that others should properly bear. Since it is not contended that the increased charges authorized by the Cemetery Board are unreasonable or unrelated to the actual costs, their imposition does not represent an abuse or unconstitutional use of power.

The foregoing makes it unnecessary to consider at length the other points made by appellants.

For the reasons stated, the order and judgment in favor of plaintiff should be reversed; plaintiff's motion should be denied; and the defendant's cross motion for judgment on the pleadings should be granted.

BELDOCK, Acting P. J., UGHETTA, CHRIST and BRENNAN, JJ., concur.

Order and judgment reversed, without costs; plaintiff's motion denied; and defendant's cross motion granted and complaint dismissed.