In the Matter of the Arbitration between the VILLAGE OF CANASTOTA, Appellant, and QUEENSBORO FARM PRODUCTS, INC., Respondent.

Third Department, April 18, 1974.

*Ralph J. Balducci, Village Attorney (Dante M. Scaccia* of counsel), for appellant.

*Joe Schapiro* for respondent.

GREENBLOTT, J. This is an appeal from an order of the Supreme Court at Special Term, entered June 8, 1973 in Madison County, which denied petitioner's motion for a stay of arbitration.

In 1966, the petitioner enacted chapter 31 of article X of the Ordinances of the Village of Canastota, which set forth rules and procedures for the determination of sewer service charges to be levied against property owners within the corporate limits of the village whose property was connected to the system. The power to determine such charges " on a year-to-year basis " was vested in the Board of Trustees (§ 1002), who were also given the right to change the charges to any owner (§ 1005). By section 1004, the board was given the power to waive the requirements of sections 1002 to 1005 in the case of any industrial user " whose waste disposal situation is such that it would be in the public interest " to do so, and to assign a special charge " by separate agreement with " such user. Nowhere in any of the provisions of the ordinance were there set forth any specific charges, nor any formulae or standards for determining same.

At some time in 1966, respondent apparently informed the village that the charges proposed to be imposed upon respond-

ent would require it to move or to construct its own sewage disposal system. The parties entered into negotiations which resulted in the contract of September 29, 1966. This contract, authorized by a resolution of the Board of Trustees, established a sewer charge of $565 per month, and provided for termination of the agreement on either of two contingencies not here relevant. Any controversy or claim arising out of or relating to the contract was to be submitted to arbitration.

In December, 1972 the Board of Trustees adopted a resolution declaring the contract void and unenforceable. After granting the respondent a hearing, the board reaffirmed its decision to cancel the contract, whereupon, on March 26, 1973, respondent served upon petitioner's mayor a notice of intention to arbitrate. Petitioner responded by moving for an order staying arbitration, which motion was denied at Special Term.

The determinative issue on this appeal is whether the contract of 1966 was valid in law so as to determine the respective rights of the parties, or invalid so as to be voidable. The answer is provided by an examination into the relevant statutes. The controlling provision, in our view, is subdivision 2 of section 452 of the General Municipal Law. That section provides, in pertinent part, that "sewer rents may be established and imposed only by * * * local law or ordinance" in the case of villages such as the Village of Canastota. Significantly, the statute does not speak of establishing sewer charges pursuant to such local law or ordinance, or in accord with a procedure prescribed by such local law or ordinance. Therefore, giving effect to the plain meaning of the language employed, it must be concluded that sewer rents can only be validly imposed if actually set forth in such local law or ordinance. This conclusion is fortified by examining subdivision 5 of section 452, which speaks of the "local law or ordinance establishing and imposing sewer rents". Section 261-a of the Village Law,* referred to by Special Term, does not lead to a different interpretation. That provision deals primarily with petitions for the construction of sewer systems, and adds that maintenance costs may be met by service charges "as the board of trustees may determine". Since the Board of Trustees is the body empowered to enact local laws or ordinances (Village Law, § 90 *), this general vesting of authority in the Board of Trustees should not be interpreted to mean that such boards may act in any manner they see fit; the specific limitation on authority

* As in effect prior to June 8, 1972.

contained in section 452 of the General Municipal Law must still control. Moreover, section 279 of the Village Law * contained in the same article as section 261-a, provides in subdivision 2 that " the board of trustees of any village may establish and impose sewer rents pursuant to the provisions of article fourteen-F [which includes section 452] of the general municipal law."

In light of the specific restrictions contained in subdivision 2 of section 452 of the General Municipal Law, it follows that petitioner lacked authority to establish sewer rates by contract, and therefore the contract of 1966 was of no force and effect. " If the contract is such a one as the municipality has no power to make, and by this is meant a contract beyond the scope of its powers and not merely one containing invalid provisions, it is ultra vires and unenforceable " (10 McQuillin, Municipal Corporations, § 29.02, p. 214). In the instant case, the petitioner had no power to establish sewer rates by contract, and since such rates were at the heart of the agreement and constituted the essential consideration for respondent's undertakings, the agreement as a whole must fall.

Nor can the petitioner be estopped to deny the validity of its *ultra vires* contract (10 McQuillin, *supra*, § 29.10). " The general rule is well settled and is constantly enforced that one who makes a contract with a municipal corporation is bound to take notice of limitations on its power to contract ", and more specifically, " every person * * * is bound to take notice * * * of the provisions of the * * * statute under which the ordinance has been passed." (10 McQuillin, § 29.04, pp. 219, 223.) Thus, respondent must be charged to have had notice that section 1004 of the Village Ordinance could not authorize a contract which could not be authorized under the terms of section 452 of the General Municipal Law and in nevertheless entering into such an agreement it did so at its own risk. *Matter of Town of Highlands* v. *Weyant* (38 A D 2d 256, app. dsmd. 30 N Y 2d 948) can be of no comfort to respondent, since that case involved a contract between a municipality and an outlying sewer district, which is a type of contract specifically authorized by section 276 of the Village Law. Moreover, the doctrine of estoppel can only be invoked against a party who has " gained some benefit or advantage by the act which is relied upon as an estoppel " (21 N. Y. Jur., Estoppel, § 17, p. 24). Here both parties did receive the mutual benefit of their bargain for the six years during which it was lived up to, and it does not appear

---

* As in effect prior to June 8, 1972.

that any inequity has resulted from its cancellation other than the inconvenience to petitioner of not having advance definite knowledge of what its sewer rates will be, which is no different than the position it would have been in had there been no agreement.

We are not unmindful of the fact that the Board of Trustees did adopt a resolution in 1966 pursuant to which the agreement was adopted, and that a resolution more closely approaches legislative action similar to that contemplated in subdivision 2 of section 452 than would a contract standing alone. However, while the record does not indicate whether the resolution ratified the specific contract here entered into or merely authorized entry into an unspecified agreement, we are of the view that the failure to include resolutions as a means of setting sewer rates under subdivision 2 of section 452, as well as the fact that " resolution " is not included within the definition of village ordinances (Village Law, § 92), requires the conclusion that ratification of a contract by resolution would not have satisfied the requirements of subdivision 2 of section 452.

Since, therefore, the contract was of no force or effect, we are not faced with a question of an unconstitutional impairment of the obligation of a contract, as Special Term erroneously believed. In *Matter of Wa-Wa-Yanda* v. *Dickerson* (18 A D 2d 251), the lease in question was not in any way in conflict with any statutes existing at the time it was entered into, and therefore it could not properly be abrogated in effect by subsequent legislation enacted by the lessor municipality attempting to impose restrictions on the tenant's use. Special Term's reliance on this case was therefore misplaced.

Notwithstanding all that has heretofore been said, we feel there is another reason why the 1972 resolution declaring the contract unenforceable must prevail. If the terms of the contract were to be legally binding, this could only be done in a manner which would satisfy section 452 by deeming them to be incorporated within the 1966 resolution and treating the resolution as the equivalent of an ordinance or local law. If this were the case, such " ordinance " would " continue in effect until repealed " (General Municipal Law, § 452, subd. 2, fifth sentence). On the facts of the present case, the 1972 resolution could only be viewed as a repealer of its 1966 predecessor, thus repealing the contract as well. Therefore, there would still not have been in existence on March 26, 1973 a contract pursuant to which respondent would have been entitled to arbitration, and,

therefore, the motion for a stay of arbitration should have been granted.

The order should be reversed, on the law, and the motion for a stay of arbitration granted, without costs.

STALEY, JR., J. P., SWEENEY, MAIN and REYNOLDS, JJ., concur.

Order reversed, on the law and the facts, and motion for a stay of arbitration granted, without costs.