■ Jerome Feldman et al., Appellants, v National Westminster Bank, N.A., Respondent. Roberta Hayes et al., Appellants, v National Westminster Bank, N.A., Respondent. [760 NYS2d 3] —Judgments, Supreme Court, New York County (Ira Gammerman, J.), entered June 28, 2002, dismissing the complaints in both actions after a consolidated nonjury trial, and bringing up for review the underlying posttrial order, same court and Justice, entered June 27, 2002, directing the dismissal of the complaint in each of the two actions, unanimously affirmed, with costs. Appeal from the underlying June 27, 2002 order unanimously dismissed, without costs, as subsumed in the appeals from the ensuing judgments.

Section 8.4 of the Phantom Stock Appreciation Plan at issue in this case states that defendant's predecessor in interest (Bancorp) shall not be liable "for any action or determination made in good faith with respect to the Plan, any Valuation, or any Phantom Stock Award granted hereunder." Under Delaware law, which governs the Plan, an exculpatory clause is enforceable (*see Malpiede v Townson*, 780 A2d 1075 [Del 2001]; *Goodwin v Live Entertainment, Inc.*, 1999 WL 64265, *5, 1999 Del Ch LEXIS 5, *14-15 [Del Ch Ct, Jan. 25, 1999], *affd* 741 A2d 16 [Del 1999]).

Even if an exculpatory clause applies only to the breach of an ambiguous provision of a contract (*see Gotham Partners, L.P. v Hallwood Realty Partners, L.P.*, 795 A2d 1, 30 [Del Ch 2001], *affd in relevant part* 805 A2d 882, 817 A2d 160 [Del 2002]; *Continental Ins. Co. v Rutledge & Co., Inc.*, 750 A2d 1219, 1240 [Del Ch 2000]), the clause at issue still applies since section 2.13 of the Plan is ambiguous. A contract is ambiguous if "the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings" (*Sanders v Wang*, 1999 WL 104, *6, 1999 Del Ch LEXIS 203, *19 [Del Ch Ct, Nov. 10, 1999]). While plaintiffs contend that section 2.13 means that, until the Plan is amended, there are only 1,000 shares of stock, defendant's interpretation—that section 2.13 merely means that, as a historical matter, there were 1,000 shares when the Plan began—is also reasonable because section 6.1 shows that the Plan contemplated changes in the number of shares.

Defendant had the burden of proving good faith under Plan § 8.4 (*see Emerald Partners v Berlin*, 726 A2d 1215, 1223-1224 [Del 1999]; *Gotham Partners, L.P.*, 795 A2d at 31). We find, as did the trial court after a four-day trial, that defendant met its burden. The action complained of—the division of Bancorp's purchase price by 3,057 "notional shares" instead of the 1,000

shares actually issued and outstanding—was consistent with the historic administration of the Plan. The use of notional shares to account for the increase in Bancorp's value caused by infusions of capital from Bancorp's parent is typical both of other phantom stock appreciation plans and of the option plans of publicly traded companies, which the Plan was intended to mimic. It also makes sense in terms of the purpose of the Plan—to give incentives to key employees to increase Bancorp's value. Finally, Bancorp was advised by its counsel Winston & Strawn that its treatment of the capital infusions was premised on a permissible interpretation of the Plan and "reliance upon experienced counsel" is evidence of good faith (*Cinerama, Inc. v Technicolor, Inc.*, 663 A2d 1134, 1142 [Del Ch 1994], *affd* 663 A2d 1156 [Del 1995]). Bancorp's Compensation Committee, which had the power to interpret the Plan and take all actions needed thereunder, and whose decisions were final and binding on Plan participants, was mostly composed of outside directors who had no financial interest in the Plan; the one inside director on the committee actually sustained financial detriment by reason of the committee's use of the concept of notional shares.

It would make no sense to switch from the notional share method to the actual share method simply because Bancorp was being sold. Since the grant price of plaintiffs' phantom stock awards was based on notional shares, plaintiffs would receive an undeserved windfall, arguably constituting a waste of corporate assets, if the exercise price were calculated on the basis of actual shares.

We have considered plaintiffs' remaining arguments and find them unavailing. Concur—Mazzarelli, J.P., Sullivan, Ellerin, Friedman and Gonzalez, JJ.