[809 NYS2d 70]

New York City Off-Track Betting Corp., Appellant, v Safe Factory Outlet, Inc., Respondent.

First Department, February 21, 2006

### APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Suzanne K. Colt* and *Elizabeth S. Natrella* of counsel), for appellant.

*Outmezguine & Associates*, New York City (*Avi Outmezguine* of counsel), for respondent.

### OPINION OF THE COURT

SWEENY, J.

In this contract action, the issues on appeal are whether denial of plaintiff's motion for summary judgment was proper upon findings that the contract language was ambiguous and that a question of fact existed as to whether plaintiff unreasonably delayed in rejecting the goods in question. For the following reasons, we hold that the motion court erred and therefore reverse.

Plaintiff New York City Off-Track Betting Corp. (OTB) is a public benefit corporation that accepts pari-mutuel bets on horse races at its branches throughout New York City. The branches maintain safes to store cash and other valuables. Plaintiff purchased two safes from defendant in April 1998 and a third in July 1998.

In September 1998, plaintiff solicited bids from safe distributors to procure 20 high-security safes. The pertinent portion of the bid specification stated: "SAFE, TRTL 15X6, UL Approved." UL is the trade abbreviation for Underwriters Laboratories Inc., an independent, nonprofit certifying organization which classifies safes based on the amount of time it takes to break into them. TRTL 15X6 means that a safe with that designation can resist a combined torch and tool attack for 15 minutes.

Prior to the bidding process, plaintiff received letters in April, May and August 1998 from Empire Safe, a competitor of defendant, indicating that safes manufactured by a company named Soltam, Ltd. might not comply with the TRTL 15X6 designation. Although plaintiff began an investigation into these allegations, in September 1998 it accepted defendant's bid to provide 20 safes manufactured by Soltam. All the safes were UL certified and were installed at OTB locations throughout New York City from February 1999 through June 2000.

Sometime in 1999, plaintiff sought confirmation from defendant that these safes complied with the TRTL 15X6 specifications in the bidding documents and contract. Defendant contacted UL, which assured it that the safes were still approved.

As part of its continuing investigation into the allegations that Soltam safes did not comply with the TRTL 15X6 UL specifications, plaintiff sent one of the safes in question to UL in May 2000 for testing. UL's report of June 28, 2000 stated that the safe did not withstand a combined torch and tool attack for 15 minutes, and hence was not acceptable for the TRTL 15X6 certification. The test also noted that stainless steel strips along the doorjamb to resist penetration were missing. In July 2000, UL issued a news release which stated that Soltam-manufactured safes may not provide the anticipated level of protection and did not meet UL requirements.

Plaintiff thereafter requested information regarding the testing procedure. In response, UL sent plaintiff a letter dated February 5, 2001, stating that the product was originally tested in October 1996 and manufactured in 1998. The tools used during the testing in 2000 were the same tools used in 1996, except for the disposable impact hammer chisel tips.

Based on its investigation and the UL test results, by letter dated February 20, 2001, plaintiff rejected delivery of the safes and rescinded the contract with defendant for failure to provide safes that met the contract requirements. Plaintiff also demanded a refund of the purchase price. By letter dated March 1, 2001, defendant stated it had no reason to believe the safes did not meet the contract requirements, was not responsible for the safe failing the test and refused to recognize plaintiff's right to rescind the contract.

"[I]t is a court's task to enforce a clear and complete written agreement according to the plain meaning of its terms, without looking to extrinsic evidence to create ambiguities not present on the face of the document" (*150 Broadway N.Y. Assoc., L.P. v Bodner,* 14 AD3d 1, 6 [2004]). "A contract is ambiguous if 'the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings' " (*Feldman v National Westminster Bank,* 303 AD2d 271, 271 [2003], *lv denied* 100 NY2d 505 [2003]). However, mere assertion by a party that contract language means something other than what is clear when read in conjunction with the whole contract is not enough to create an ambiguity sufficient

to raise a triable issue of fact (*Ruttenberg v Davidge Data Sys. Corp.*, 215 AD2d 191, 193 [1995]).

Here the parties differ over the meaning of the contract specification "SAFE, TRTL 15X6, UL Approved." The contract does not further define "TRTL 15X6" nor does it define "UL Approved," and neither party questioned the meaning of the specification prior to entering into the contract. Defendant contends that the contract required it to deliver UL-approved safes with the TRTL 15X6 classification. It correctly argues that TRTL 15X6 is not an industry standard but a UL standard. However, that classification means UL certified the safe bearing it as able to withstand a tool and torch attack for 15 minutes. The contract specifications are clear that the safes must be UL approved to those standards. Defendant's contention that TRTL 15X6 was simply a UL classification, and not a measure of the safe's strength, is an attempt to create an ambiguity in the contract where there is none and does not, of itself, rise to the level of a triable issue of fact. Indeed, defendant's claim that these are two separate requirements renders the classification meaningless.

Nor can defendant escape liability by claiming it was a distributor, not a manufacturer, and merely provided UL-approved safes with the required designation. The record clearly reveals that the safes defendant provided were not the same as the original samples tested by UL in 1996. UCC 2-103 (1) (d) defines a "[s]eller" as "a person who sells or contracts to sell goods." UCC 2-313 (1) (b) provides: "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." The description of the goods in the contract is clear. The fact that the safes provided did not conform to the contract specifications is also clear.

On the issue of the timeliness of plaintiff's rejection of the safes, UCC 2-602 (1) provides that such rejection must be made within a "reasonable time" after the buyer discovers or should have discovered the defect, and "any act inconsistent with the seller's ownership of the goods constitutes an acceptance (UCC 2-606 [1] [c]), including their retention without a seasonable notice of revocation of acceptance" (*Tobron Off. Furniture Corp. v King World Prods.*, 161 AD2d 355, 356 [1990]). While timely rejection is generally a question of fact, "when only one inference may be drawn as to the reasonableness of the time in which defendant rejected the goods, it becomes a question of law" (*Tabor v Logan,* 114 AD2d 894, 894 [1985]).

While it is true that plaintiff received letters from Empire Safe prior to accepting defendant's bid in 1998, this does not, of itself, indicate acceptance by plaintiff of nonconforming goods (UCC 2-601 [b]). Plaintiff, in fact, commenced an investigation into the allegations made in those letters, which continued through February 2001. Plaintiff sought assurances from defendant that the safes complied with the UL certification and received such assurances in November 1999. Obviously still concerned, plaintiff sent a safe to UL for testing in May 2000 and was advised the following month that it did not meet the UL classification. Plaintiff thereafter requested information regarding the testing procedures and received a letter from UL dated February 5, 2001, stating that the tools and testing protocol utilized were the same as those used in the original testing in 1996, but that the product was not the same as the one originally tested. Plaintiff thereafter rejected the goods by letter dated February 20, 2001.

Given the fact that a safe must be destroyed during the testing process, it was not unreasonable for plaintiff to delay testing until it had essentially completed the rest of its investigation into Empire's allegations. It was not unreasonable for plaintiff to seek verification from UL that the testing procedures and protocols were the same as those originally used, and that the safe failure was not the result of improved tools or employee skills, before it rejected the goods. Moreover, the goods in question were not perishable or rendered obsolete by the passage of time.

Taking into account "the nature, purpose and circumstances of such action" (UCC 1-204 [2]), the rejection of the goods was not unreasonable, and was thus timely (UCC 1-204).

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered May 3, 2004, which denied plaintiff's motion for summary judgment, should be reversed, on the law, without costs, the motion granted, and the matter remanded for further proceedings, including the entry of judgment.

Tom, J.P., Andrias, Sullivan and Gonzalez, JJ., concur.

Order, Supreme Court, New York County, entered May 3, 2004, reversed, on the law, without costs, plaintiff's motion for summary judgment granted, and the matter remanded for further proceedings, including the entry of judgment.