OPINION OF THE COURT
Daniel Palmiebi, J.
This motion by the defendant[1] pursuant to CPLR 3212 for summary judgment, in effect, declaring that the plaintiff is obligated to pay a stated increase in sewer usage fees, and directing that such payments be made, is denied. Further, upon a search of the record, summary judgment is granted to the plaintiff to the limited extent set forth in this decision and order.
The essential facts of this action, challenging the propriety of proposed increases in the plaintiffs nonresident sewer charges by the defendant, are undisputed. The plaintiff Knolls of Glen Head Owners Corp. is the controlling entity of a multiresidence private condominium community that lies outside the boundaries of the City of Glen Cove. In 1983 the Knolls developer, one Alvin Benjamin, entered into a contract under which the City agreed to connect that community to the City’s municipal sewage system and ultimately its waste treatment facility in exchange for, inter alia, an annual payment of $500 per dwelling unit. The contract stated, among other things, that this fee “shall include the Sewer Use Charge as provided for in section 146.3 (B) of the City of Glen Cove Municipal Code.” At the time the contract was signed the nonresident sewer use charge was $150 per single-family dwelling unit.
From time to time the annual fee was increased to $300 in 1997 and to $400 in 1999. No attempt was made to charge the Knolls more than the $500 agreed to in 1983, and none of its residents or the condominium corporation attempted to have the $500 rate reduced.
In 2004, in response to what the plaintiff asserts were sharply rising costs to maintain the sewage system and waste treatment *939 facility,[2] the City Council passed a resolution which increased the annual charge to $600, and sought collection from the Knolls at this rate. The present action resulted.
During the course of discovery, the plaintiff obtained documents indicating that the facility itself had been constructed in the late 1970s with funds from the Federal Environmental Protection Agency (EPA), which provided most of the money necessary under a clean water construction grant pursuant to the Federal Water Pollution Control Act (FWPCA) (33 USC § 1251 et seq.)[3] Pursuant to federal statute, any grant to be made after 1973 required the administrator of the EPA to first determine that the grant applicant
“(A) has adopted or will adopt a system of charges to assure that each recipient of waste treatment services within the applicant’s jurisdiction, as determined by the Administrator, will pay its proportionate share (except as otherwise provided in this paragraph) of the costs of operation and maintenance (including replacement) of any waste treatment services provided by the applicant” (33 USC § 1284 [b] [1]).
Under a related section of the Code of Federal Regulations, EPA regulations provide under a subdivision entitled, “Adoption of system” that “One or more municipal legislative enactments or other appropriate authority must incorporate the user charge system.” (40 CFR 35.929-2 [e].) The “other appropriate authority” referred to in the regulations has been held to include contracts such as the one in this case. (Welch Foods v Wilson, 277 AD2d 882, 884-885 [4th Dept 2000].)
In its motion for summary judgment, the defendant City asserts that plaintiffs 1983 contract is, in effect, voidable, and thus is no bar to an increase in the rates Knolls owners, as nonresidents, must pay. The City contends that the change in rate it adopted (City of Glen Cove Code ch 225) supersedes the 1983 contract pursuant to General Municipal Law § 452, which establishes the right of local government to adopt and enforce *940 sewer rents. The version of the statute then in effect provided that “sewer rents may be established and imposed . . . only by local law or ordinance” thus foreclosing the ability of the City to establish such rents by contract (General Municipal Law § 452 [former (2)]; see Matter of Village of Canastota [Queensboro Farm Prods.], 44 AD2d 276 [3d Dept 1974], affd 36 NY2d 793 [1975].)
The City also claims that, as indicated above, federal law requires that recipients of waste treatment services pay a proportional share of the cost of maintaining the system providing such services, and that the increase is consistent with this requirement. (33 USC § 1284 [b] [1].) The City also urges that, even if the 1983 contract is not void, two factors should lead to the conclusion that it is no bar to its act of raising the Knolls’ rate. First, the language concerning the inclusion of the sewer use charge in the $500 fee means, in effect, that the fee as adopted by the City should always be covered by that figure, and if it ever exceeded that figure, the latter must be deemed to be amended so that the current use charge is covered. Second, because the contract contains no fixed expiration date, it must be deemed to expire at a reasonable time, and has now expired because 22 years is more than reasonable.
Finally, the City asserts that given the increases in operating costs, a concomitant increase to users of this public facility must supersede contract rates under case authority indicating that income necessary to maintain services must be realized so that such services may continue. (See Jewish Ctr. of Mt. Vernon v Mt. Eden Cemetery Assn., 15 AD2d 94 [2d Dept 1961].)
As this motion is one for summary judgment, the court must initially decide if the defendant has made out a prima facie case that it is entitled to judgment as a matter of law. Absent a sufficient showing, the court should deny the motion, irrespective of the strength of the opposing papers. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985].) If a sufficient prima facie showing is made, however, the burden then shifts to the non-moving party. To defeat the motion for summary judgment the opposing party must come forward with evidence to demonstrate the existence of a material issue of fact requiring a trial. (CPLR 3212 [b]; see also GTF Mktg. v Colonial Aluminum Sales, 66 NY2d 965 [1985]; Zuckerman v City of New York, 49 NY2d 557 [1980].)
Under these well-established standards, the court concludes that the movant has not made its initial showing, and even if it had, the opposing papers are sufficient to defeat the motion.
*941 At the outset, it should be noted that the contract presented by the City contains provisions concerning an initial payment from the developer to the City and other terms related to the construction of the sewer system connection. However, no issue is presented to the court other than those terms related to the ongoing payment by Knolls residents of sewer usage charges.
In its moving papers the defendant, by reference to Justice McCabe’s decision, has effectively acknowledged that FWPCA may apply to this controversy. It therefore has not established, as a matter of law, that General Municipal Law § 452 (former [2]) renders the contract setting the lower rate voidable. FW-PCA and its allied regulations are in conflict with this state statute to the extent that the latter forbade setting sewer rates by contract, because FWPCA allows it;[4] and under such circumstances the federal law must be applied under the Supremacy Clause. (Balbuena v IDR Realty LLC, 6 NY3d 338, 356 [2006]; Welch Foods, Inc. v Wilson, supra.)
As the 1983 contract thus has not been shown voidable under the General Municipal Law, the City must therefore demonstrate, prima facie, that some other basis exists for finding, as a matter of law, that the contract should be interpreted to allow the 2004 rates established by its local law to bind the plaintiff. In that regard, the City has urged that under federal law there must be payment by recipients of sewer and waste treatment services on a proportional basis, in effect arguing that the fixed $500 payment violates federal law by not being representative of such proportional amount. However, it has presented no proof that $500 does not represent a fair proportional payment.[5]
The mere fact that the City has passed a law requiring a $600 payment does not make this showing. In simple terms, this alone is not proof that this figure was intended to and did accomplish the goals to be met in setting rates under FWPCA regulations. (See 40 CFR 35.929-2 [b].)
Nor does the increase in. operating costs referred to above, standing alone, demonstrate the inadequacy of a $500 payment. *942 Specifically, the City points to a 63% increase in costs between 1996 and 2007. However, the comparable sewer rate charged nonresidents in 1997 was $300. In 2004, when the rates were raised (which is earlier than the 2007 measuring date used by the City, and thus, arguably, a year when the full increase in costs referred to had not yet occurred), the contractual rate for Knolls residents was $500. This is 60% more than the rate set in 1997. Therefore, broadly speaking the Knolls is now paying at a rate that is comparable to the asserted increase in costs during the noted period. As there is no other proof advanced that would demonstrate how only $600 (a 100% increase in sewer rates, when compared to 1997), as opposed to $500, represents the proportional payment required by federal law, this is not a basis for overturning the contractual rate.
As to the contract itself, the court cannot agree that the only possible interpretation of paragraph 6 of the 1983 agreement is that any increase in the sewer use charge above $500 must be paid because the contractual amount is stated to “include the Sewer Use Charge.” Rather, it is just as possible to interpret the provision to mean that no additional charge would be incurred by Knolls residents for use of the sewer system because it was included in the $500 payment. Indeed, in view of the fact that until 2004 Knolls residents were actually paying more than other nonresidents, it appears, at a minimum, that the $500 annual charge was not directly tied to the rate established in the City Code.
In any event, in view of the foregoing the court cannot find that the terms of the contract, as read within the four corners of the agreement, require the interpretation urged by the City. Rather, because it is reasonably susceptible of different interpretations the court finds the provision to be ambiguous. (Feldman v National Westminster Bank, 303 AD2d 271 [1st Dept 2003].) Parol evidence therefore would be admissible, and under such circumstances the meaning of the contract becomes a question for the trier of fact. (Geothermal Energy Corp. v Caithness Corp., 34 AD3d 420 [2d Dept 2006]; Pellot u Pellot, 305 AD2d 478 [2d Dept 2003].) Since absolutely no evidence is presented that settles the issue in the City’s favor, no prima facie showing that the contract calls for the increase to match the 2004 resolution has been made.
The next basis advanced by the City is that the contract cannot be considered to be perpetual in nature, but rather limited to a “reasonable period,” urged to be the period that passed *943 from 1983 to the present. Because the contract does not expressly provide for perpetual performance at the 1983 rate, the law will imply that the parties intended performance to continue for a reasonable time. (See Haines v City of New York, 41 NY2d 769, 772 [1977].) However, given the circumstances extant here, including the City’s acknowledgment that FWPCA likely applies, its position that the time that already has passed at the $500 rate is per se reasonable is untenable; it does not foreclose the possibility that such rate continues to be sufficient to insure proportional user payment under applicable federal law and regulations, by which the City is bound.
Finally, the court agrees with the City’s position that there is authority in support of the proposition that statutes and rules regulating fees for publically controlled facilities should be read in terms of the public services provided thereby, and may justify a change in user fees if that is necessary to maintain those services. (Jewish Ctr. of Mt. Vernon v Mt. Eden Cemetery Assn., supra; see also 40 CFR 35.929-2 [g] [user charge system mandated under federal regulations takes precedence over inconsistent agreements between grantee and users].) Indeed, a party contracting with the State or a municipality is chargeable with knowledge of statutes regulating the government entity’s contracting powers, and is bound by them. (Parsa v State of New York, 64 NY2d 143, 147 [1984]; see also Infrastructure Mgt. Sys. v County of Nassau, 2 AD3d 784 [2d Dept 2003].) Again, however, there is no proof that the current Knolls payments are insufficient to meet the City’s financial needs, or violate federal statute or regulations.
Accordingly, the motion must be denied for failure to make a prima facie demonstration of entitlement to the declaration and direction of payment it seeks. In any event, the presentation by the plaintiff of evidence demonstrating that the FWPCA funds were utilized in the construction of the City’s waste treatment facility, and that the federal statute and regulations therefore apply, would lead to denial for the same reasons articulated above.
However, the court declines to grant summary judgment to plaintiff upon a search of the record, as sought in its memorandum of law, except to the extent it declares that the subject contract must be deemed to incorporate the requirements of federal law and regulations applicable to the maintenance of facilities built with federal funds, inasmuch as plaintiff has presented unrebutted proof that the City’s waste treatment plant *944 falls under such law and regulations. The length of time the performance under that contract is reasonable (Haines v City of New York, supra) is a question for the finder of fact, which must be made with reference to such regulations.
The court cannot grant judgment on the principal relief sought in the complaint, which is, in essence, vacatur of the rate increase and a declaration that the contractual rate is binding on the City, without any end date. No admissible evidence is presented that the parties intended the $500 payment to continue indefinitely, inasmuch as what the current president of plaintiffs board of directors heard from Benjamin about the rate continuing “in perpetuity” is hearsay. Even if this was the parties’ understanding and intent, it would be unenforceable and void were it to lead to a violation of applicable law and regulations. (Infrastructure Mgt. Sys. v County of Nassau, supra; 40 CFR 35.929-2 [g].)
Nor can the court agree with the plaintiff that the proper length of the agreement, if not in perpetuity, is 40 years under General Municipal Law § 119-a, or until 2023. This is simply a statutory maximum term, but should not be utilized if it undermines the public purposes served by contracts providing for sewer services. (Cf. Matter of Town of Highlands v Weyant, 38 AD2d 256 [2d Dept 1972].) In any event, and as a matter of prima facie proof, there is no showing that up to and including 2023 the current $500 payment would be sufficient to meet federal requirements, which bind the plaintiff just as they bind the City. (Parsa v State of New York, supra.) Thus, no initial demonstration is made that a 40-year period would not conflict with federal law and regulations, which must take precedence under the Supremacy Clause. (Balbuena v IDR Realty LLC, supra.)

. By prior order of the court dated January 26, 2006 (McCabe, J.) petitioner’s request to convert what initially had been brought as a CPLR article 78 proceeding to a plenary action for breach of contract and declaratory judgment was granted and discovery was conducted. (See CPLR 103 [c].) Accordingly, the petitioner and respondent shall be identified hereafter as plaintiff and defendant, respectively. Further submissions should bear that designation.

. The City no longer has records regarding costs covering 1983-1995. However, the City states that there was an increase in cost from approximately $142,000 per month in 1996 to approximately $224,000 in 2007, an increase of approximately 63%.

. The record is not clear as to amount, but separate documents state that the grant covered 75% or 85% of the cost. In either case, and for purposes of this decision, it is clear that the facility could not have been constructed without the federal grant, which constituted the bulk of the necessary funds.

. The Appellate Division, Fourth Department, decision (Welch Foods, Inc. v Wilson, supra) is the sole state appellate authority so interpreting FWPCA. This interpretation is binding on this court inasmuch as the Appellate Division, Second Department, has not spoken to the contrary. CMountain View Coach Lines v Storms, 102 AD2d 663 [2d Dept 1984].)

. Because neither party has raised the issue, the court will not address whether under federal law and regulations a municipality may charge more than the minimum required to insure a proportional payment by users.