Berkeley Research Group, LLC v FTI Consulting, Inc. (2018 NY Slip Op 00222)





Berkeley Research Group, LLC v FTI Consulting, Inc.


2018 NY Slip Op 00222


Decided on January 11, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 11, 2018

Gische, J.P., Kapnick, Oing, Moulton, JJ.


5114 652218/16 5113

[*1]Berkeley Research Group, LLC, Plaintiff-Appellant,
v
FTI Consulting, Inc., Defendant-Respondent.


Alston & Bird LLP, New York (John F. Cambria of counsel), for appellant.
Cole Schotz P.C., New York (Joseph Barbiere of counsel), for respondent.



Order, Supreme Court, New York County (O. Peter Sherwood, J.), entered October 28, 2016, which granted defendant's motion to dismiss the first amended complaint, unanimously modified, on the law, to deny the portion of the motion seeking to dismiss the causes of action for breach of contract and a declaratory judgment, and otherwise affirmed, without costs. Order, same court and Justice, entered April 17, 2017, which, insofar as appealed from as limited by the briefs, denied plaintiff's motion for leave to replead, unanimously reversed, on the law, without costs, and the motion granted.
The underlying dispute in this appeal is whether, under the express terms of the operative agreements, defendant had an unfettered, unilateral right to terminate one of them, the subcontractor agreement. After defendant unilaterally terminated the subcontractor agreement, plaintiff commenced this action alleging breach of contract and breach of the covenant of good faith and fair dealing, also seeking a declaratory judgment. Supreme Court granted defendant's motion to dismiss the complaint and denied plaintiff's subsequent motion for leave to replead.
Plaintiff (BRG) and defendant (FTI) are competing consulting firms. Nonparty Allen D. Applbaum was employed as head of FTI's global risk and investigations practice until January 2015, when he resigned. Shortly thereafter, in March 2015, he began employment with BRG. To resolve disputes regarding a non-compete provision in Applbaum's employment contract with FTI, on March 27, 2015, FTI, BRG and Applbaum entered into a Settlement Agreement that provided that they would, among other things, share the revenue generated by BRG's and/or Applbaum's work on FTI matters. On the same date, FTI and BRG separately entered into a subcontractor agreement that allowed Applbaum, now a BRG employee, to continue to perform certain professional services for FTI in connection with FTI matters. The subcontractor agreement, which was annexed as Schedule 3 to the settlement agreement, identifies FTI as the "Company" seeking to retain Applbaum and BRG as the "Consultant" that employs Applbaum and "agrees to permit [him] to perform such services."
The settlement agreement requires that BRG share with FTI all fee revenue that Applbaum originates during the first 12 months of his employment at BRG at the rate of 12.5% for work that Applbaum himself performs and 10% for work performed by other BRG employees (FTI revenue share). Conversely, FTI agreed to share with BRG, at a rate of 10%, all professional staff and expert fee revenue generated from matters referred to FTI by Applbaum during that same twelve (12) month period (BRG revenue share). BRG guaranteed that it would pay FTI "a minimum of $500,000 in respect of the FTI Revenue Share," in two equal installments. These payments were "Advance Payments" that would be deducted from what was owed as the FTI revenue share. The first advance payment, due upon execution of the settlement agreement, was paid. In December 2015, FTI notified BRG that it had terminated the subcontractor agreement. The second advance payment, due on the first anniversary of the settlement agreement, which occurred only after FTI terminated the subcontractor agreement, [*2]was not paid by BRG.[FN1]
The settlement agreement references the subcontractor agreement and the subcontractor agreement incorporates certain provisions of the settlement agreement. Section 4(b) of the settlement agreement provides:
"The Parties agree that a material consideration for Applbaum and BRG of this Agreement is the execution of and compliance with the Subcontractor Agreement attached as Schedule 3 to this Agreement, and further agree that this Agreement shall not become effective until the Subcontractor Agreement has been executed by all parties provided that the Revocation Period, as such term is defined below, has expired. The Parties agree to work together to serve the best interests of these two clients and hereby confirm to each other to cooperate in good faith to do so. FTI does not have any present intention of replacing Applbaum as the team leader on these engagements and it is currently contemplated he will remain the team leader for the duration of these engagements; provided, however, the Parties agree that: (i) Applbaum shall report to the Engagement leader . . . and (ii) FTI . . . retains exclusive control and discretion to manage these matters"
As pertinent to this dispute, section 10 of the settlement
agreement defines the revocation period as follows:
"In the event that Applbaum elects to execute this Agreement, he has a period of seven (7) days following the date of his execution to revoke this Agreement (the "Revocation Period"), which revocation must be in writing. . . . This Agreement will not be effective or enforceable until the expiration of the Revocation Period (the "Effective Date").
The subcontractor agreement contains no express revocation period. Section 1(B) of the subcontractor agreement states that "[s]ubject to Section 4 of the settlement agreement, which is incorporated herein, either Party [FTI or BRG] may immediately terminate the Agreement or any State of Work by delivering written notice to the other Party." In addition, the subcontractor agreement is subordinate to the settlement agreement, in that section 9.B provides, "The parties agree that, to the extent any term or condition set forth herein in contrary to, or inconsistent with, the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control."
It is the interplay of these provisions, in particular the termination language in the subcontractor agreement, that frames BRG's and FTI's dispute over whether FTI had the unilateral and unfettered right to terminate the subcontractor agreement. Relying only on the subcontractor agreement, FTI contends, and the motion court agreed, that section 1(B) gave either party an unfettered right to terminate the subcontractor agreement at any time and without reason. BRG, however, contends that the subcontractor agreement's express incorporation of section 4 of the settlement agreement is important, requiring reference to that section in interpreting the termination provision of the subcontractor agreement. Section 4 of the settlement agreement, in part, refers to a revocation period as well as the parties' intention to work together to serve the best interests of certain of the parties' clients. BRG argues that the incorporation of section 4 into the subcontractor agreement explicitly limits the scope of the subcontractor agreement and that the right to "immediately" terminate the Subcontractor [*3]Agreement is not the same as having the right to terminate at any time.
It is axiomatic that "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]; Spivak v Bertrand, 147 AD3d 650, 651 [1st Dept 2017]). If, however, a contract's provisions are subject to more than one or conflicting reasonable interpretations, the agreement will be considered ambiguous, requiring a trial on the parties' intent (JPMorgan Chase Bank, N.A. v Luxor Capital Realty, LLC, 101 AD3d 575, 576 [1st Dept 2012]; RM Realty Holdings Corp. v Moore, 64 AD3d 434, 436 [1st Dept 2009]). The language of the instant operative agreements allows for more than one reasonable interpretation of the parties' intentions when they entered into the agreements. Accepting the facts as alleged in the complaint as true, we find that BRG has a cause of action for breach of contract (see e.g. Cron v Hargo Fabrics, 91 NY2d 362, 366 [1998]). These interrelated agreements are ambiguous because the subcontractor agreement is "reasonably or fairly susceptible of different interpretations or may have two or more different meanings" (New York City Off-Track Betting Corp. v Safe Factory Outlet, Inc., 28 AD3d 175, 177 [1st Dept 2006] [internal quotation marks omitted]).
While FTI's reliance on the term "immediately" in the subcontractor agreement may be reasonable, it does not readily account for why that provision, which contains the additional "[s]ubject to" language, referring to the settlement agreement, would allow FTI the unfettered right to immediately terminate the subcontract agreement. Likewise, while BRG's interpretation may also be reasonable, it does not fully account for how a present intention not to terminate Applbaum from employment is equivalent to an ongoing duty to use his services for the entire term of the settlement agreement. Given these ambiguities, the breach of contract cause of action should not be dismissed on the pleadings.
The breach of implied covenant of good faith and fair dealing claim however, was correctly dismissed, because it duplicates the breach of contract action, both claims arising from the same facts (see Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce, 70 AD3d 423, 426 [1st Dept 2010], lv denied 15 NY3d 704 [2010]).
Because the viability of the declaratory judgment claim, in part, depends on the viability of the contractual claims, the declaratory judgment claim, for a declaration that BRG is excused from performing under the settlement agreement, should proceed at this time, given our holding that the agreements are subject to more than one interpretation.[FN2]
CPLR 3025(b) provides that leave to amend shall be freely given. BRG should be given leave to replead to include allegations regarding the drafting history of the agreement. Such allegations may be necessary to ascertain the parties' intent and the purpose of the subcontract agreement as a whole.
We also grant BRG leave to amend its complaint to add allegations that FTI failed to make payments due under section 4(a) of the settlement agreement for work performed by Applbaum. BRG's failure to supply a redlined proposed amended complaint is a "technical defect, which the court should have overlooked," since these allegations were properly highlighted in BRG's counsel's affirmation and moving brief (see Medina v City of New York, 134 AD3d 433, 433 [1st Dept 2015]; see also CPLR 3025[b]). FTI does not contend that the proposed claim is palpably insufficient, and, because the statute of limitations had not yet run on this breach of contract claim, BRG could have brought it as a separate action, without any need for a showing of merit (see CPLR 213[2]). Under all these circumstances, the absence of an affidavit of merit or other evidentiary proof is not dispositive (see Delta Dallas Alpha Corp. v South St. Seaport L.P., 127 AD3d 419 [1st Dept 2015]).
We have considered plaintiff's remaining arguments, including the argument that the case should be remanded to a different justice, and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 11, 2018
CLERK



Footnotes

Footnote 1:The nonpayment of the second advance payment is the subject of the third cause of action for a declaratory judgment.

Footnote 2:We do not reach the issue of whether the payments due are contingent on performance or other aspects of the settlement agreement.