[992 NYS2d 857]

Robert D. Scholem, Plaintiff, v Acadia Realty Limited Partnership, Defendant.

Supreme Court, Suffolk County, August 7, 2014

## APPEARANCES OF COUNSEL

*Seyfarth Shaw LLP*, New York City, for defendant.

*Farley & Kessler, P.C.*, Jericho and *Farrell Fritz, P.C.*, Uniondale, for plaintiff.

## OPINION OF THE COURT

ELIZABETH H. EMERSON, J.

Ordered that this motion by the defendant for summary judgment dismissing the complaint is granted.

The plaintiff was employed by the defendant as a senior vice-president/director of property management. On June 12, 2008, the parties entered into a severance agreement, which gave the plaintiff enhanced severance benefits if his employment were terminated by him for good reason or by the defendant without cause or if his employment were terminated due to his death or disability. The plaintiff was not entitled to receive enhanced severance benefits if his employment were terminated for cause, which was defined as, inter alia, conduct "constituting a mate-

rial act of willful misconduct in connection with the performance of his duties." On May 20, 2009, the plaintiff, a member of senior management, engaged in sexual relations with his administrative assistant, a woman whom he directly supervised, in violation of the defendant's sexual harassment policy.\* After investigating the matter, the defendant offered the plaintiff the option of resigning with three months' salary or being terminated for cause. The plaintiff refused to resign. By a letter dated August 17, 2009, the defendant terminated the plaintiff's employment for cause for engaging in an inappropriate "romantic" relationship with a subordinate.

The plaintiff was fully aware of the defendant's sexual harassment policy and the consequences of violating it. Both the defendant's Employee Handbook and Code of Business Conduct and Ethics prohibit harassment of any kind, including sexual harassment. In addition, the Employee Handbook prohibits sexual relations between supervisors and subordinates, consensual or otherwise. The Employee Handbook provides that all such sexual relations are a violation of the defendant's sexual harassment policy, which may result in disciplinary action up to and including discharge from employment. While the Employee Handbook was not a part of nor incorporated by reference in the severance agreement, the plaintiff acknowledged in writing that he received copies of the Employee Handbook on July 22, 2008 and July 27, 2009, respectively, and in the same writing agreed to abide by the policies and procedures contained therein. Moreover, on September 8, 2008, the plaintiff attended a training seminar on the subject of appropriate workplace behavior that was sponsored by the defendant. He acknowledged in writing that he had been provided with a copy of the defendant's equal-opportunity, non-harassment, and sexual harassment policies; that they had been reviewed during the training session; that he had read and understood them; and that he agreed to abide by their terms. He also acknowledged in the same writing that anyone who engaged in conduct prohibited thereby would be subject to disciplinary action up to and including discharge.

After terminating the plaintiff's employment, the defendant refused to pay the plaintiff enhanced severance benefits on the

---

\* Although there is evidence in the record that the plaintiff had sexual relations with his administrative assistant on several occasions over a period of months when she was in a fragile emotional state, that evidence is disputed. The plaintiff admits to a single sexual encounter with her on May 20, 2009, while on a business trip to Rhode Island.

ground that his termination was for cause. The plaintiff commenced this action for breach of contract, claiming that his termination was not for cause. The plaintiff moved and the defendant cross-moved for summary judgment at the beginning of the case. By an order of this court dated October 8, 2010, the motion and cross motion were denied. After the parties deposed all of the key witnesses and concluded discovery, the case was certified ready for trial. The defendant again moves for summary judgment dismissing the complaint.

 Although multiple summary judgment motions in the same case are discouraged, the defendant's motion does not violate the general proscription against successive summary judgment motions. Discovery is now complete, and the record is fully developed. The motion is based, at least in part, on deposition testimony that was elicited after this court's denial of the defendant's earlier cross motion for summary judgment (*see Alaimo v Mongelli*, 93 AD3d 742, 743 [2012]). The defendant raises issues that were not raised on the earlier motion and that are now ripe for summary judgment. The current motion, in addition to being substantively valid, will further the ends of justice while eliminating an unnecessary burden on the resources of the courts (*American Equity Ins. Co. v A & B Roofing, Inc.*, 106 AD3d 762, 763 [2d Dept 2013]). Entertaining a second summary judgment motion under these circumstances is a better use of judicial resources than conducting a full trial (*Rose v Horton Med. Ctr.*, 29 AD3d 977, 978 [2006]). Moreover, the court notes that it was the plaintiff who first moved for summary judgment. The defendant cross-moved for summary judgment in response thereto. It appears that the plaintiff is attempting to obtain a tactical advantage by arguing that the present motion should be denied because it is a successive motion for summary judgment.

Contrary to the plaintiff's contentions, the denial of the defendant's prior cross motion is not the law of the case. A denial of summary judgment on the merits is merely a determination that the moving party has failed to make the requisite showing at that time (*Johs v P.G.S. Carting Co., Inc.*, 2005 NY Slip Op 30301[U], *7 n 5 [Sup Ct, Suffolk County, Apr. 25, 2005, Emerson, J.], *revd in part on other grounds* 40 AD3d 929 [2007]). It does not bar the court from resolving an issue after further discovery (*Matter of Cohen v Crown Point Cent. School Dist.*, 306 AD2d 732, 734 n [2003]), nor does it bind the trier of fact (*Brettschneider v Brettschneider*, 113 Misc 2d 861, 865 [1982]).

An order denying summary judgment only establishes that a question of fact exists for determination at a trial (*Cohen v New York Herald Tribune*, 63 Misc 2d 87, 103 [1970]). It does not establish the law of the case any more than the grant or denial of a temporary injunction (*id*.). Neither res judicata nor law of the case is applicable to an order denying summary judgment because such an order lacks the quality of finality and is not a conclusive adjudication precluding further consideration of the issues (*id*.).

The court finds that the defendant has established, prima facie, its entitlement to judgment as a matter of law. Although the parties dispute the nature and extent of the plaintiff's relationship with his administrative assistant, the plaintiff admitted that he engaged in a consensual sexual encounter with her on May 20, 2009, while staying at a hotel in the Rhode Island area and while on business for the defendant. The Employee Handbook clearly provides that sexual relations between supervisors and subordinates, even consensual ones, are a violation of the defendant's sexual harassment policy and that such violations may result in disciplinary action up to and including discharge from employment. The plaintiff acknowledged receiving the handbook and agreed to abide thereby. At his deposition, the plaintiff was asked whether he had any factual basis for his belief that violations of the defendant's sexual harassment policy did not constitute cause for termination of his employment. He responded, "I believe that it is one of the potential rights and remedies . . . based on the handbook . . . I believe it is Acadia's option." The court finds that, under these circumstances, the plaintiff was terminated for cause because he committed "a material act of willful misconduct in connection with the performance of his duties."

The plaintiff has failed to raise a triable issue in opposition to the defendant's prima facie case. As previously discussed, neither the law of the case nor the proscription against successive summary judgment motions is applicable. Moreover, the plaintiff's attempt to parse the language of the severance agreement is unavailing. A written agreement is ambiguous only if it is reasonably susceptible to more than one interpretation (*RM Realty Holdings Corp. v Moore*, 64 AD3d 434, 436 [2009]). In deciding whether an agreement is ambiguous, the court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed (*id*.). Particular words should be considered, not as if isolated from

the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby (*id.*). Form should not prevail over substance, and a sensible meaning of the words should be sought (*id.*).

Contrary to the plaintiff's contentions, the term "willful misconduct" is not ambiguous. The word "willful" is sometimes said to be a word of many meanings (*El-Dehdan v El-Dehdan*, 114 AD3d 4, 14 [2013]). It most obviously differentiates between deliberate and unwitting conduct and often denotes an act that is intentional, knowing, or voluntary, as distinguished from accidental (*id.* at 14-15). Black's Law Dictionary defines "willful" as "[v]oluntary and intentional, but not necessarily malicious" (*id.*, citing Black's Law Dictionary 1737 [9th ed 2009]). English language dictionaries usually show at least two meanings of the word: (1) deliberate and intentional and (2) obstinately or perversely self-willed (*id.*, citing www.merriam-webster.com; www.oxforddictionaries.com; www.dictionary.com). The record reflects that the plaintiff was fully aware of the defendant's sexual harassment policy, including the prohibition against sexual relations between supervisors and subordinates, and the consequences of violating that policy when he had sexual relations with his administrative assistant in May 2009. The plaintiff, therefore, knew that he was engaging in misconduct, and his actions were not accidental or unwitting. Although the plaintiff contends that the May 2009 sexual encounter was not initiated by him, the record reveals that he did nothing to stop it, nor does he contend that he was under the influence of alcohol or otherwise unable to consent thereto. Moreover, since it occurred while on a business trip to Rhode Island, the court finds that it was in connection with the performance of the plaintiff's duties.

It is settled law that an employer generally is entitled to direct how an employee shall perform his duties (*Rudman v Cowles Communications*, 35 AD2d 213, 216 [1970], *mod on other grounds* 30 NY2d 1 [1972]). As long as the employer's directions are not unreasonable, the employee is bound to obey them (*id.*). An employer's determination of good cause justifying termination of an employment contract is entitled to deference particularly when, as here, a high-level management employee is involved (*Trieger v Montefiore Med. Ctr.*, 15 AD3d 175, 176 [2005]). Good cause means some substantial shortcoming detrimental to the employer's interests that the law and sound public opinion recognize as grounds for dismissal (*Elsemore v*

*Lake Placid Group, LLC*, 2007 WL 4324254, 2007 US Dist LEXIS 90449 [ND NY, Dec. 7, 2007, No. 8:05-CV-306, Sessions, Ch. J.]). The ultimate criterion of good cause is whether the employer acted reasonably in discharging the employee because of misconduct (*id.*). A discharge may be upheld as one for cause (1) if it is reasonable to discharge employees because of certain conduct and (2) if the employee had fair notice, express or implied, that such conduct would be grounds for discharge (*id.*).

The defendant has presented evidence, which the plaintiff does not dispute, that sexual harassment is detrimental to its business interests, as well as being contrary to the law and sound public opinion. The defendant adopted its sexual harassment policy because sexual harassment claims pose a major risk to employers, exposing them to reputational injury and legal costs even if the claims are found to be without merit. The defendant prohibited sexual relations between supervisors and subordinates because they are implicitly coercive, because they tend to create an intimidating work environment, and because they interfere with the work of the supervisor, the subordinate, and other employees. The plaintiff had fair notice that it was the defendant's policy to prohibit all forms of sexual harassment, including consensual sexual conduct between supervisors and subordinates, and that such conduct would be grounds for his discharge. The court finds that, under these circumstances, it was reasonable to terminate the plaintiff's employment for cause. Having put in place a strong policy against sexual harassment, the defendant needed to enforce that policy. To pay the plaintiff the enhanced severance benefits to which he would be entitled only if his termination were without cause would minimize his misconduct, which is clearly contrary to the defendant's express policies, as well as the public policy of this state. Accordingly, the motion is granted.