(March 10, 1992)

■ TELEMUNDO GROUP, INC., Appellant, v ALDEN PRESS, INC., et al., Respondents.—Order and judgment, Supreme Court, New York County (Myriam Altman, J.), entered April 26, 1991 and June 18, 1991, respectively, which, inter alia, granted summary judgment dismissing the complaint to defendants, reversed, on the law, and the complaint reinstated, without costs.

This is an action for breach of contract, conversion, and unjust enrichment, which arises from a May 1986 stock purchase agreement between plaintiff, Telemundo Group, Inc. ("Telemundo"), then known as John Blair & Company, and defendant Alden Holdings, Inc. ("AHI"). Under the terms of the agreement, AHI purchased all of the common stock of Telemundo's wholly-owned subsidiary, Alden Press, Inc.

("API"), for a price reached through a complex formula set forth in Sections 1 (A) and 1 (C). At issue on appeal is whether Telemundo is entitled to a tax refund which API received from the State of Illinois after the transfer of ownership to AHI.

In pertinent part, Section 1 (A) of the agreement provided that AHI would pay a price comprised of the "Adjusted Book Value" plus $11.45 million. The "Adjusted Book Value" is defined in Section 1 (C) as follows:

"[T]he book value of [API]

"(i) minus the book value of all receivables owed to [API] by [Telemundo] * * *

"(ii) plus the book value of all payables owed by [API] to [Telemundo] * * *

"(iii) plus Federal and state (other than deferred state income taxes) income taxes reflected on the Balance Sheet as payable by [API],

"(iv) minus Federal and state (other than deferred state income taxes) income taxes reflected as owed to or to be received by [API],

"(v) plus all amounts on the Balance Sheet accrued with respect to [certain employee compensation programs]."

In July 1987, API received an anticipated $723,417 tax refund from Illinois, which falls within the category of assets listed in Section 1 (C) (iv) of the agreement. AHI's purchase price had been reduced by this amount, and Telemundo claims that this was agreed to because the refund was to be turned over to Telemundo upon receipt. It is the defendants' position that the omission in the contract of any such obligation on their part permits their retention of the tax overpayment concededly made by Telemundo. The IAS part agreed, and granted defendants summary judgment dismissing the complaint. We reverse.

In interpreting contractual language, a court must accord the words of the agreement a " 'fair and reasonable meaning' ", which includes consideration of "not merely literal language, but whatever may be reasonably implied therefrom" *(Sutton v East Riv. Sav. Bank,* 55 NY2d 550, 555). Because summary judgment is a " 'drastic remedy' " not to be granted where there is any doubt as to the existence of a triable issue *(Rotuba Extruders v Ceppos,* 46 NY2d 223, 231), care must be taken before such relief is granted, particularly where, as here, the interpretation sought by the moving party would produce an unreasonable result *(see, Mandelblatt v*

*Devon Stores,* 132 AD2d 162, 167; *Nassau Ch., Civ. Serv. Employees Assn. v County of Nassau,* 77 AD2d 563, 564, *affd* 54 NY2d 925).

The interpretation proffered by defendants would give AHI the benefit of a reduction in purchase price for the amount of the estimated taxes paid by Telemundo, and then double this benefit by permitting AHI to retain the refund. We cannot agree that the intention of the parties with respect to this provision is so clear and unambiguous that it may be determined as a matter of law *(see, Mandelblatt v Devon Stores, supra,* at 166).

Nor do we accept the argument that the standard integration clause contained in the contract precludes further inquiry. Extrinsic or parol evidence is admissible notwithstanding such a clause where it "would not modify or contradict the terms of the contract, but would explain ambiguities in the contract." *(Word Mgt. Corp. v. AT&T Information Sys.,* 135 AD2d 317, 319.)* Concur—Murphy, P. J., Rosenberger and Kassal, JJ.

Sullivan, J., dissents in a memorandum as follows: Since plaintiff's claim that the stock purchase agreement obligates defendants to turn over a $723,417 State of Illinois tax refund received by defendant Alden Press, Inc. (Alden) in 1987 is barred by the agreement's unambiguous language, I would affirm the IAS court's grant of summary judgment dismissing the complaint.

Plaintiff agreed to sell all of the common stock—not the assets—of its wholly owned subsidiary, Alden, to Alden Holdings, Inc. (Holdings), with which, on May 13, 1986, it entered into a fully integrated 83-page contract—the stock purchase agreement—which sets out, comprehensively and in great detail, the parties' rights and obligations with respect to the transfer of Alden's stock. As is undisputed, not a single provision of that agreement states or in any way suggests that Alden or Holdings is obligated to pay over to plaintiff any subsequently received tax refunds, either as a balance sheet adjustment, purchase price adjustment or separate promise by Alden or Holdings. The absence of any such provision in so comprehensive an agreement, drafted and negotiated by sophisticated and knowledgeable counsel, compels the conclusion that the remission of future tax refunds was not part of the transaction.

In that regard, it should be noted that the agreement's six articles, thirty-two sections and innumerable subsections and

ten exhibits cover the full range of subjects usually found in complex contracts for the sale of a business. There are numerous representations, warranties and indemnities providing for the assumption of liabilities or transfer of benefits between the parties. Article II, for example, lists the various representations and warranties with respect to a host of subjects, including Alden's finances, its outstanding contracts and pending litigation, employee-benefit obligations, suppliers and customers, insurance policies and inventory and accounts receivable. In similarly comprehensive detail, Article III sets forth a series of additional covenants and agreements, including Alden's commitments as to the operation of the business and plaintiff's as to the repurchase of accounts receivable and payments to Alden executives under existing benefit plans.

Significantly, the agreement also deals comprehensively with tax issues, including future tax liabilities and refunds. It contains pages of tax related "Representations and Warranties" and a statement of governing tax-accounting principles. There are also detailed "Covenants and Agreements" describing plaintiff's and Holdings' respective duties to indemnify each other for tax liabilities attributable to the pre-closing and post-closing periods. Moreover, the agreement's purchase price formula—the provision on which the majority relies—specifically takes into account future tax refunds in setting the price paid by Holdings for Alden's stock. The agreement also contains an integration clause barring proof of other terms.

In the absence of any contract term even remotely requiring either Alden or Holdings to remit future tax refunds to it, plaintiff bases its claim solely on the agreement's purchase price formula, set forth in two provisions, Section 1 (A), (C), alleging that this complex provision reflects an unexpressed intention that, stock sale notwithstanding, it, and not Alden or Holdings, is entitled to any tax refunds its former subsidiary, Alden, might subsequently receive. Plaintiff claims that by virtue of these provisions the purchase price to be paid by Holdings was decreased by $723,417, the amount of an estimated tax receivable from the State of Illinois. According to plaintiff, it would not have agreed to this adjustment to the book value and purchase price had it not believed that Alden would remit this anticipated tax refund to it upon receipt. Plaintiff concedes that its accountants made the adjustment to the closing balance sheet, in accordance with the terms of the agreement, to reflect the estimated tax refund shown on Alden's books as due it from the State of Illinois. One year

after the execution of the agreement, Alden received the refund.

It is well settled that a fully integrated agreement, such as the instant stock purchase agreement, may not be supplemented by proof that the parties intended additional terms. A contract complete upon its face "is conclusively presumed to integrate the final intentions of the parties and may no more be extended by the inclusion of additional terms than it may be contradicted by parol." *(William H. Waters, Inc. v March,* 240 App Div 120, 125.) Courts concern themselves with what the parties intended, but only " 'to the extent that they evidenced what they intended by what they wrote' *(Raleigh Assoc.* v. *Henry,* 302 N. Y. 467, 473) and that intent must be gleaned from the several provisions of the contract". *(Laba v Carey,* 29 NY2d 302, 308.)

On the basis of these well-settled principles, the complaint should have been dismissed. The premise upon which plaintiff's claim is based—that the agreement's purchase price provisions reflect an unstated intention that Alden turn over the $723,417 it receives—is inadequate as a matter of law. Plaintiff was required to show that the claimed obligation was expressed in the agreement; nothing therein, however, even suggests that Alden is obliged to turn over subsequently received tax refunds to plaintiff or that such refunds are the property of anyone other than Alden. Surely, had the parties agreed or understood that to be Alden's obligation, such a key price-related term would not have been omitted.

Plaintiff's claim that it and its competent counsel would, in an 83-page, fully integrated document, omit any reference to so formidable an obligation as the remittance of an anticipated tax refund of approximately $700,000 strains credulity. Had such an obligation been intended, the parties would have so provided as they did with respect to the parties' respective obligations, including those ancillary, to indemnify each other for taxes attributable to the pre-closing and post-closing periods. They would, for example, not only have spelled out Alden's obligation to turn over any tax refunds but also the concomitant obligation to notify plaintiff of any dispute with the taxing authority as to the amount due, to furnish plaintiff with the proper authority to pursue and collect funds owed but not received and to cooperate with plaintiff in the event legal action might be required. Nor is it any response to argue that no provision of the agreement expressly permits Alden to retain post-closing tax refunds. Since the transaction involved a sale of Alden's stock, not its assets, Alden's assets continued

to be owned by Alden. Thus, the agreement nowhere lists the assets Alden was to retain.

The attempt to supplement a fully integrated agreement by unwritten but purportedly implied terms has been consistently rejected where, as here, the parties could have easily included the term but did not. As the Court of Appeals noted in *Namad v Salomon Inc.* (74 NY2d 751, 753), "[P]laintiff's argument that the bonus clause entitles him to payments approximately equal to his previous annual salary of $170,000 is unpersuasive as the parties would be expected to make reference to such a large sum of money in the agreement with particularity". *(See also, Collard v Incorporated Vil. of Flower Hill,* 52 NY2d 594, 603-604; *West, Weir & Bartel v Carter Paint Co.,* 25 NY2d 535, 541; *Slatt v Slatt,* 102 AD2d 475, 476, *affd* 64 NY2d 966.)

Finally, since the stock purchase agreement is unambiguous and imposes no obligation to remit post-acquisition tax refunds to plaintiff, parol evidence is inadmissible to show otherwise. *(See, e.g., Namad v Salomon Inc., supra,* at 753.) In any event, even after the court, with plaintiff's consent, converted defendant's motion addressed to the sufficiency of the complaint to one for summary judgment, plaintiff declined the court's invitation to submit affidavits in which it could have offered extrinsic evidence in opposition to the motion.

Given the lack of any support in the agreement itself for the obligation plaintiff sues upon, it is relegated to an attack on the "fairness" and "reasonableness" of the agreement's terms. It is, of course, a complete answer to these arguments to note that it is not the court's responsibility to rewrite the parties' agreement to render it fair but, rather, to enforce it as written.

Plaintiff argues that enforcement of the agreement would give Holdings a "windfall" by allowing it to "keep a tax refund it did not pay for." There is no factual support for such a claim. Holdings paid $11.45 million over the "adjusted book value" to acquire Alden's stock. That negotiated price, including the various book value adjustments and the premium, necessarily reflected each party's appraisal of the value of the stock, taking into account all of Alden's assets as well as liabilities. Thus, it is inappropriate to focus exclusively, as does plaintiff, on a single component of the total purchase price calculation, i.e., the "adjusted book value", which supposedly does not account for the value of the anticipated tax refund, while ignoring other aspects of the purchase price,

such as the $11.45 million premium over adjusted book value and the fact that the total purchase price was a negotiated sum, reflecting compromise by both sides. There is no reason to conclude that the parties did not take the value of the anticipated refund into account in their negotiation of the $11.45 million premium.

The purchase price in its totality paid for Alden's stock in its totality and necessarily reflected the aggregate value of all of Alden's assets and liabilities. That some other alternative way of structuring the purchase price might have resulted in a more symmetrical balance between the value of the assets acquired and the purchase price is of no moment.

Summary judgment dismissing the complaint was properly granted.