■ EMANUEL HIRSCH et al., Appellants, v FOOD RESOURCES, INC., Doing Business as EASTERN MEATS et al., Respondents. [808 NYS2d 618]—

Order, Supreme Court, New York County (Faviola A. Soto, J.), entered March 2, 2005, which granted defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), unanimously modified, on the law, to the extent of denying defendants' motion to dismiss the causes of action for breach of contract and unjust enrichment and reinstating said causes of action, and otherwise affirmed, without costs.

Plaintiffs are two brothers, Emanuel and Arthur Hirsch, and the estate of a third brother, Seymour. Defendants are Food Resources, Inc., a family-owned wholesale meat purveyor located in the 14th Street meatpacking district, and Gerald Hirsch, son of the fourth brother, Sol Hirsch, who died in 1992. Sol founded Food Resources in the 1930s and owned all 75 of its shares, although Arthur gave the business $60,000.

Plaintiffs allege that, in September 1957, they and Sol entered into a shareholder agreement whereby plaintiffs were each given 12 shares. Sol was left with 39 shares, constituting a majority. In 1954, the business moved to 450 West 14th Street (450), which it initially occupied as a tenant and later purchased through a wholly owned subsidiary. Plaintiffs allege that, because some of them were nearing retirement, they and Sol agreed that each of them would receive deferred compensation from the business in the form of cash payments and the proceeds

from the disposition, by sale or otherwise, of 450 when it was no longer needed for business operations; Sol would receive 62½% of the proceeds and each plaintiff 12½%.

Seymour and Arthur retired in or about 1980, and Sol's health declined in the late 1980s, so Emanuel ran the business from 1990 until his 1997 retirement. In 1990, Food Resources, with a $200,000 loan from Emanuel, purchased 446 West 14th Street (446), and the business moved there. By 1992, Sol owned 83⅓% of the corporation and Emanuel owned the remainder; Seymour and Arthur had retired.

In 1992, with Sol very ill, plaintiffs and Food Services entered into an agreement which provides that, upon termination of Sol's relationship with Food Resources, Emanuel's interest would be redeemed for book value, for no less than $160,000. There was to be "deferred compensation": "*Upon* the *sale* of [450]," the Corporation was obligated to pay 12½% of the "net proceeds of *sale*" to Emanuel, Seymour and Arthur or their estates (emphases added). The agreement further provides that it supersedes prior agreements and controls in the event of conflict, but does not preclude future modifications.

Plaintiffs allege that (1) "sale" was intended to also mean "lease" and "disposition," and (2) although the language does not *expressly* require a sale, it memorializes the brothers' intent and *implies* the obligation to sell, lease or dispose of the property. They claim that, after Sol died, defendants reaffirmed and acknowledged the obligation to make the 12½% payments upon the disposition of 450 in, inter alia, an October 2001 letter from Gerald to Emanuel wherein Gerald offered to pay, over the course of nine years, "the same sum that was agreed to acquire your interest in the net proceeds from the sale of [450]. The payments will be treated as deferred compensation as previously agreed by you . . . ." Gerald advised that "there is no pending transaction regarding the sale *or leasing* of the building . . . the balance of the [payments] shall be paid . . . at such time as a sale *or leasing* of the building has occurred" (emphases added).

The meatpacking business declined, and Gerald allegedly sought a nest egg for his anticipated retirement. Plaintiffs allege that he sold 446, but purposefully avoided selling 450, structuring the 2004 disposition of 450 as a 49-year lease to the purchaser of the nearby 446 so as to frustrate plaintiffs' rights to share in the proceeds of a sale. The lessee allegedly paid a nonrefundable $4 million and received an option to purchase the property in 10 years for $12 million.

Plaintiffs seek recovery against Food Resources for breach of

an oral contract, breach of the 1992 written agreement, and breach of the implied covenant of good faith and fair dealing, against Gerald Hirsch for tortious interference, and against both defendants for unjust enrichment.

Gerald Hirsch contends that plaintiffs' rights could only be triggered by an actual sale, and not by the lease, and denies trying to frustrate their rights. He asserts that, although 450 had been previously leased in the 1990s, plaintiffs did not then claim that such lease triggered their rights. He also notes that the 2004 lease grants not an option, but a right of first refusal. He claims to have been the one who ran the business after his father Sol died, and that plaintiffs had been employed out of the goodness of Sol's heart, without any moral claim to the money they now seek.

Emanuel Hirsch takes issue with Gerald's scenario, claiming that Gerald had been hired by the business, but fired in 1984. He asserts that the critically ill Sol had executed the 1992 agreement out of concern for his brothers' well-being and did not trust Gerald to abide by the oral agreement to pay them the proceeds of the sale of 450. He asserts that Gerald acknowledged his obligation to pay each of his uncles $12\frac{1}{2}\%$ of the proceeds "derived from" 450, regardless of the form of the transfer, and that Gerald and Food Resources could not unilaterally refuse to sell the building. The steep discount in the redemption price of Emanuel's shares is claimed to have been consonant with this obligation, to avoid paying him twice for the sale of 450 by not factoring in the building's value.

Whether a contract is ambiguous is a matter of law for the court (*Matter of Stravinsky*, 4 AD3d 75, 81 [2003]), as is the interpretation of an unambiguous contract (*Taussig v Clipper Group, L.P.*, 13 AD3d 166, 167 [2004], *lv denied* 4 NY3d 707 [2005]). In dismissing plaintiffs' contract claims, the motion court erred in finding that the 1992 agreement is unambiguous, that evidence of the alleged prior oral agreement is barred as contradicting its terms, that it is not required that the 450 East 14th Street property be sold or otherwise disposed of, and that plaintiffs are entitled to shares of the proceeds if and only if the property is sold.

Although the agreement does not in so many words require that defendant corporation sell the building, there is an issue of fact, not presently resolvable, as to whether such requirement was either an implied contractual assumption or intended as an express requirement. This is especially so in light of the brevity of the agreement, only three pages long and imposing only two substantive obligations, regarding stock redemption and

deferred compensation. Further militating toward this possible understanding are the circumstances of its execution, when the majority shareholder was near death, the minority shareholders who were its alleged beneficiaries were of retirement age or beyond, and the building was no longer being used for business operations (*see Kass v Kass*, 91 NY2d 554, 566 [1998]).

Contrary to defendants' contention, this ambiguity does not arise from extrinsic evidence (*cf. Cornhusker Farms v Hunts Point Coop. Mkt.*, 2 AD3d 201, 204 [2003]), and the finding of ambiguity does not improperly create a new contract under the guise of interpretation (*cf. Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004]).

Moreover, the 2001 letter from Gerald to Emanuel, on Food Resources stationery, referring to a "leasing" of the property, presents an alternative theory that, even if the 1992 agreement was intended to require a sale in order to trigger plaintiffs' rights to compensation, such agreement was modified. The claim of an oral agreement is viable because the written agreement bars only prior conflicting oral agreements, while the claimed oral agreement is consonant with plaintiffs' stated understanding of the writing (*see Telemundo Group v Alden Press*, 181 AD2d 453, 455 [1992]). Whether or not "sale" was also intended to mean "lease" need not be determined, although that, too, presents an issue of fact.

If there was an obligation to sell under the 1992 agreement, and the 49-year lease was a "sale" within its meaning, then defendants breached by not paying plaintiffs' shares of the proceeds. But even if a sale was not expressly required, but defendant corporation had discretion to sell nonetheless, and even if the lease was not a "sale," then structuring the transaction to avoid a sale could breach the agreement. The exercise of an apparently unfettered discretionary contract right breaches the implied obligation of good faith and fair dealing if it frustrates the basic purpose of the agreement and deprives plaintiffs of their rights to its benefits (*see Tradewinds Fin. Corp. v Refco Sec.*, 5 AD3d 229, 230-231 [2004]).

The allegation that Gerald Hirsch accepted the benefits of the long-term lease without adequately compensating plaintiffs sets forth, at the pleading stage, a claim for unjust enrichment (*see Korff v Corbett*, 18 AD3d 248, 251 [2005]; *Joseph Sternberg, Inc. v Walber 36th St. Assoc.*, 187 AD2d 225, 228 [1993]).

However, even if there was a contract, the tortious interference claim against Gerald was properly dismissed. While the allegation that his conduct was actuated by bad faith may meet the enhanced pleading standard for such a claim against him in

his capacity as a corporate officer (see *Joan Hansen & Co. v Everlast World's Boxing Headquarters Corp.*, 296 AD2d 103, 109-110 [2002]), it is otherwise deficient because, as holder of 83⅓% of Food Resources' shares, he was also acting as an owner with an economic interest; absent allegations of malice or fraudulent or illegal means, no liability lies against him (see *Waterfront NY Realty Corp. v Weber*, 281 AD2d 180 [2001]; *MTI/Image Group v Fox Studios E.*, 262 AD2d 20, 23-24 [1999]). We have considered defendants' other contentions and find them unavailing. Concur—Sullivan, J.P., Ellerin, Williams, Gonzalez and McGuire, JJ.