■ RM REALTY HOLDINGS CORP., Appellant, v PETER MOORE et al., Respondents. [884 NYS2d 344]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered June 14, 2007, which, in this breach of contract action, granted plaintiff's motion to reargue and, upon reargument, vacated its prior order dismissing the complaint without prejudice and granted defendants' motion to dismiss the complaint with prejudice, affirmed, without costs.

Plaintiff is the owner of the penthouse unit (unit 8) in a condominium building. Outside the penthouse is a 3,200-square-foot terrace. Pursuant to the offering plan, the terrace is a limited common space to which plaintiff has exclusive access. At the same time plaintiff closed on the purchase of the penthouse from defendant 145 Americas LLC, it entered into a "Development Rights Agreement" (DRA) with it and its managing member, defendant Peter Moore. Moore, who owns unit 4 in the building, also owns all of the building's air rights. Paragraph 1 of the DRA transferred 2,000 square feet of those air rights to plaintiff "immediately adjacent to the terrace on the same level

of Unit 8." The DRA expressly reflected the parties' understanding that the purpose of the air rights transfer was to facilitate plaintiff's plan to increase the interior space of the penthouse. The DRA further provided, in paragraph 5, that plaintiff's "authorization will be required in case other owners of air rights want to build in the area immediately adjacent to his unit."

Six months after the DRA was executed, defendants sold certain air rights not transferred by the DRA to a developer that was planning to construct a high-rise hotel on property located west of the condominium building. Between the footprint of the planned hotel and the condominium building is a 50-foot-wide public plaza, which the parties appear to agree cannot be developed. Accordingly, when construction of the hotel is complete, its eastern wall will be at least 50 feet away from the western wall of the condominium building.

Sometime after learning of the sale of air rights to the hotel developer, plaintiff commenced this action for breach of contract. It alleged that, among other things, defendants violated paragraph 5 of the DRA by not obtaining plaintiff's authorization before selling air rights to the hotel developer.

Defendants moved to dismiss the original complaint on several grounds, including that they could not have breached paragraph 5 of the DRA because the documentary evidence established that the hotel developer did not intend to "build in the area immediately adjacent to [plaintiff's] unit." In response to the motion, plaintiff served an amended complaint that withdrew all of the claims except the breach of contract cause of action. According to the amended complaint, plaintiff and defendants "intended and agreed that the right of refusal pursuant to paragraph 5 of the [DRA] would apply to all property and buildings immediately adjacent to Unit 8, including the relevant property owned by [the hotel developer]."

Notwithstanding the amendment, the motion court considered the motion to dismiss, and granted it. The court found the words "immediately adjacent" to be unambiguous and that the hotel, when built, would not be "immediately adjacent" to either plaintiff's existing penthouse apartment or the terrace appurtenant to it. Plaintiff moved to reargue, stating that, at oral argument of the original motion, the court erroneously adopted defendants' counsel's statement that, as a limited common element, the terrace appurtenant to plaintiff's penthouse is something in which "everyone in the building shares and shares alike." Thus, plaintiff surmised, the court must have concluded that, because another unit owner in the building could have built on the terrace, DRA paragraph 5 must have been intended

to apply to that eventuality. Plaintiff argued that because as a "limited common element" it had exclusive use of the entire terrace, and no unit owner could have built on it, DRA paragraph 5 must have referred to the hotel.

The court granted reargument but adhered to its original decision and dismissed the complaint with prejudice. It stated that counsel for defendants did appear to misstate the definition of the term "limited common element" but it made clear that the original order dismissing the complaint did not rely on that definition. Instead, the court held that plaintiff's contention that the term "immediately adjacent" extended to the air rights over the hotel property was "absurd and contrary to the [DRA] as a matter of law."

A written agreement is ambiguous only if it is *reasonably* susceptible of more than one interpretation (*Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]). In deciding whether an agreement is ambiguous we should " 'examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought' " (*Kass v Kass*, 91 NY2d 554, 566 [1998], quoting *Atwater & Co. v Panama R.R. Co.*, 246 NY 519, 524 [1927]).

Here, the interpretation of paragraph 5 of the DRA offered by plaintiff, that the hotel will be "immediately adjacent" to its penthouse (or even the edge of the terrace), is not reasonable. Had the parties intended to give plaintiff the right to block the construction of a building 50 feet away from the edge of the terrace, it is perhaps plausible that they would have referred to that property as being simply "adjacent" to "the unit," whether "the unit" meant the penthouse alone or the terrace as well. However, it defies logic that they would have added the modifier "immediately," which implies an absence of appreciable space between "the unit" and the structure that is to be "built." Moreover, if, as plaintiff contends, the parties were referring to the hotel, they presumably would have specifically said so in the agreement.

It also strains credulity that defendants would have given plaintiff perpetual carte blanche to block potentially lucrative transfers of air rights to developers in the trendy Soho neighborhood where the condominium building is located. The dissent claims that this "ignores basic economics" and that had plaintiff *not* insisted on the right to approve the sale of any of Moore's

air rights it would have behaved as an "economics rube." However, the dissent then acknowledges the possibility that, if its interpretation of paragraph 5 is correct, plaintiff "got the better of the deal by becoming an equal partner in those air rights." In other words, the dissent recognizes that Moore may have been an "economics rube" by granting plaintiff the unfettered and eternal right, not even limited by the requirement that plaintiff act reasonably, to forever block the sale of any of his air rights. The dissent ultimately disposes of the issue by calling it "irrelevant." However, it is not irrelevant. It is probative as to whether plaintiff's proposed interpretation of the DRA is reasonable.

In any event, an examination of the DRA reveals that its clear intention was to transfer to plaintiff the air rights necessary to permit it to construct an addition to its penthouse apartment. Reading the DRA "as a whole" (*Kass*, 91 NY2d at 566), it is quite evident that paragraph 5 was included to ensure that defendants would not permit other condominium owners to impede plaintiff's ability to build on the terrace. That no other condominium owner could have built on the terrace due to the terrace's status as a limited common element to which plaintiff had exclusive use does not change the conclusion that paragraph 5 of the DRA is not ambiguous. The only alternative meaning which plaintiff ascribes to paragraph 5, that a hotel 50 feet away is "immediately adjacent" to the terrace, is simply not a reasonable one, and this does not render the provision ambiguous. It is far more reasonable to interpret paragraph 5 as an additional assurance to plaintiff that its right to use the terrace area was inviolate, and that no one could build in the area in which, pursuant to paragraph 1, it was purchasing the air rights.

Nor is discovery necessary. Any such discovery would simply be an opportunity for plaintiff to uncover parol evidence to attempt to *create* an ambiguity in an otherwise clear and unambiguous agreement. Unless this Court were to find an ambiguity, such parol evidence would be inadmissible at trial or on a subsequent motion for summary judgment (*see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 163 [1990], citing *Intercontinental Planning v Daystrom, Inc.*, 24 NY2d 372, 379 [1969]).

The dissent's parsing of the phrase "the area immediately adjacent to [its] unit" in paragraph 5 of the DRA is, in contravention of well-settled canons of contract interpretation, an exercise in elevating form over substance (*W.W.W. Assoc.*, 77 NY2d at 163). In concluding that those seven words could express the parties' intention that plaintiff had the ability to block the sale of air rights to the hotel's developer, the dissent

fails to follow the rule that "courts examining isolated provisions 'should then choose that construction which will carry out the plain purpose and object of the [agreement]' " (*Kass v Kass*, 91 NY2d at 567, quoting *Williams Press v State of New York*, 37 NY2d 434, 440 [1975], quoting *Empire Props. Corp. v Manufacturers Trust Co.*, 288 NY 242, 249 [1942]). No matter how vociferously the dissent argues that the term "immediately adjacent" has no "definite and precise meaning," it cannot escape the fact that the alternative meaning it ascribes to the term is simply not reasonable. Again, ambiguity in a written agreement only exists if there is more than one reasonable interpretation of the language at issue (*see Chimart Assoc. v Paul*, 66 NY2d at 573).

Further, the dissent's statement that paragraph 5 would, under defendants' interpretation, be superfluous, does not require that we determine the DRA to be ambiguous. The clause may have been superfluous to the extent it was not necessary to secure plaintiff's rights. It did not, however, negate *another* provision in the DRA. In *Bretton v Mutual of Omaha Ins. Co.* (110 AD2d 46 [1985], *affd* 66 NY2d 1020 [1985]), cited by the dissent, the interpretation urged by the plaintiff would have required that a clause in the subject insurance policy expressly limiting coverage to "certain specified losses" be completely ignored. This Court held that if it accepted the plaintiff's construction, it would violate the rule that "[a] court, no matter how well intentioned, cannot create policy terms by implication or rewrite an insurance contract" (*id.* at 49). Here, accepting defendants' interpretation of paragraph 5 does not alter the purpose of the DRA nor render any other provisions of the DRA meaningless.

The plain purpose of the DRA was to ensure that plaintiff would have an unfettered right to expand the penthouse. Defendants' interpretation of paragraph 5 promotes that purpose. Plaintiff's interpretation does not. Indeed, given that both paragraph 1 and paragraph 5 of the DRA utilize the term "immediately adjacent," it is unreasonable to interpret paragraph 5 as creating an obligation that has nothing to do with plaintiff's plan to expand its living space. Concur—Mazzarelli, J.P., Buckley and DeGrasse, JJ.

McGuire, J., dissents in a memorandum as follows: Plaintiff purchased the penthouse unit of a Manhattan building. Defendant 145 Americas LLC was the sponsor of the condominium offering in the building and defendant Moore was the managing member of 145 Americas. The unit occupied the northeast portion of the roof of the building and a terrace took up the remain-

ing area of the roof. Pursuant to the relevant "declaration of condominium," plaintiff had sole use of the terrace.

On the same date plaintiff purchased the unit, the parties entered into a "Development Rights Agreement" (the agreement). The agreement provides, in relevant part:

"Whereas, [plaintiff] is purchasing condo unit 8 ('Unit 8') . . . ;

"Whereas, [Moore] is purchasing condo unit 4D ('Unit 4D') . . . ;

"Whereas, the development and air rights for the Building (the 'Development Rights') are appurtenant to Unit 4D;

"Whereas, Moore is a manager of the Sponsor;

"Whereas, as an inducement to [plaintiff] to purchase Unit 8, Moore is granting to [plaintiff] a portion of the Development Rights . . .

"(1) Effective the date on which [plaintiff] closes on the purchase of Unit 8, Sponsor and Moore hereby grant to [plaintiff] 2,000 square feet of Development Rights (the 'Air Rights') immediately adjacent to the terrace on the same level of Unit 8.

"(2) It is understood that the grant of Air Rights described in the above paragraph 1 is for the purpose of allowing [plaintiff] . . . to increase the interior square footage of Unit 8 and, if [plaintiff] has not built within such Air Rights increasing the surface of Unit 8, the Air Rights will be assignable to third parties both within or without the area immediately adjacent [to] Unit 8 . . .

"(5) [Plaintiff's] authorization will be required in case other owners of air rights want to build in the area immediately adjacent to his [sic] unit."

The agreement gave plaintiff two benefits: 2,000 square feet of air rights "immediately adjacent to the terrace" and the power to determine whether to permit another "owner[ ] of air rights . . . to build in the area immediately adjacent to [plaintiff's] unit."

Approximately six months after plaintiff purchased the unit and entered into the agreement, defendants entered into a contract with a third party, Bayrock, pursuant to which defendants sold approximately 27,000 square feet of air rights around the building to Bayrock. Bayrock purchased the rights to increase the size of its building on the lot adjacent to the lot of the building containing plaintiff's unit.

Plaintiff commenced this action against defendants seeking

damages for breach of the agreement. Plaintiff claims that under paragraph 5 of the agreement, defendants needed (but failed to obtain) its authorization to transfer the air rights to Bayrock because it is an "owner[ ] of air rights [and] want[s] to build in the area immediately adjacent to plaintiff's unit." Plaintiff alleges that once Bayrock completes construction of its building the views from plaintiff's unit will be substantially reduced, thereby diminishing the unit's value. Defendants moved to dismiss the action under CPLR 3211 (a) (1) and (7) on the ground that Bayrock's building is not "immediately adjacent to [plaintiff's] unit." Supreme Court granted the motion and dismissed the complaint "without prejudice." The court subsequently granted plaintiff's motion to reargue and, upon reargument, vacated its original decision and granted the motion to dismiss "with prejudice." This appeal by plaintiff ensued.

This appeal turns on the meaning of the phrase "the area immediately adjacent to [plaintiff's] unit." Plaintiff argues that the "area" includes the space over Bayrock's building because Bayrock's parcel is immediately adjacent to the building containing plaintiff's unit. Alternatively, plaintiff argues that dismissal of the action on a CPLR 3211 motion is inappropriate because the phrase is ambiguous and its meaning turns on extrinsic evidence that must be evaluated by the trier of fact. Defendants maintain that the phrase "immediately adjacent" is unambiguous and means the area *abutting* the walls of plaintiff's condominium. Thus, in defendants' view, "the terrace is what is 'immediately adjacent' to [plaintiff's] Commercial Unit." Because plaintiff's unit (so defined to exclude the terrace) is approximately 100 feet away from Bayrock's building, defendants assert that Bayrock will not build a structure "in the area immediately adjacent to [plaintiff's] unit."

The principles of contract law we must apply in resolving this appeal are well settled. "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" without reference to extrinsic evidence (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). "A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion" (*id.* [internal quotation marks and citation omitted]). Conversely, a contract is ambiguous if on its face it is reasonably susceptible of more than one interpretation (*see Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]). Where a contract is ambiguous, extrinsic evidence of the parties' intent may be

submitted by the parties and evaluated by the trier of fact (*see Greenfield*, 98 NY2d at 569; *Amusement Bus. Underwriters v American Intl. Group*, 66 NY2d 878, 880 [1985] ["when a term or clause is ambiguous and the determination of the parties' intent depends upon the credibility of extrinsic evidence or a choice among inferences to be drawn from extrinsic evidence, then the issue is one of fact"]). Whether a contract is ambiguous is a question for the court (*Kass v Kass*, 91 NY2d 554 [1998]), and if the court concludes that an ambiguity exists the contract cannot be construed as a matter of law (*see Zuckerwise v Sorceron Inc.*, 289 AD2d 114 [2001]).

The phrase "in the area immediately adjacent to [plaintiff's] unit" is, on its face, reasonably susceptible of more than one interpretation and therefore ambiguous. The word "area," which is not defined in the agreement, is a term of uncertain scope. "Area" means "a particular extent of space or surface or one serving a special function" (Merriam-Webster's Collegiate Dictionary 65 [11th ed 2006]); "any particular extent of space or surface," "a geographical region" and "the space or site on which a building stands; the yard attached to or surrounding a house" (Random House Webster's Unabridged Dictionary 110 [2d ed 2001]). Equally imprecise is the phrase "immediately adjacent," which modifies the "area" that is the subject of paragraph 5 of the agreement, and it also is not defined in the agreement. "Adjacent" means "lying near, close, or contiguous; adjoining; neighboring" (*id.* at 25), and "immediately" is defined as "with no object or space intervening," "closely" (*id.* at 957). As is obvious, the phrase "area immediately adjacent to" has no definite and precise meaning.

The phrase "[plaintiff's] unit," which is the measuring rod of the area affected by the agreement, also is ambiguous. Plaintiff contends that under paragraph 5 its "unit" includes the terrace, of which plaintiff has sole use under the "declaration of condominium." Under plaintiff's view of the word "unit" in paragraph 5, defendants were required to obtain its authorization to transfer air rights that are "in the area immediately adjacent" to the condominium unit itself and the terrace. Defendants contend that the word "unit" means the condominium exclusive of the terrace, and under paragraph 5 of the agreement plaintiff's authorization was required only "if the transfer of air rights was effectuated in order to build a structure that abutted [plaintiff's unit] or the [building housing the unit]." Notably, in several places in the agreement the parties refer to plaintiff's condominium as "Unit 8" and make separate references to "the terrace." In paragraph 5, and only paragraph 5,

the parties refer to plaintiff's "unit"—the "u" is lower-case and the numeral "8" is omitted—thus indicating that "the unit" in paragraph 5 denotes something other than the condominium unit itself (*see NFL Enters. LLC v Comcast Cable Communications, LLC*, 51 AD3d 52, 60-61 [2008, Gonzalez, J.] ["The use of different terms in the same agreement strongly implies that the terms are to be accorded different meanings"]). Accordingly, the phrase "in the area immediately adjacent to [plaintiff's] unit" is reasonably susceptible of more than one interpretation.

Another problem plagues defendants' construction of the agreement. Under defendants' construction of paragraph 5, "the area immediately adjacent to [plaintiff's] unit" is the terrace and the terrace alone. Plaintiff, however, already enjoyed exclusive use of the terrace under the "declaration of condominium," and under defendants' construction of paragraph 5 plaintiff only obtained a right to prevent another from building on the terrace—a right plaintiff already had under the "declaration of condominium." Thus, as defendants' construction renders paragraph 5 superfluous, it is "unsupportable" (*Suffolk County Water Auth. v Village of Greenport*, 21 AD3d 947, 948 [2005], citing *Lawyers' Fund for Client Protection of State of N.Y. v Bank Leumi Trust Co. of N.Y.*, 94 NY2d 398 [2000]). As we have stated, an agreement's "terms should not be assumed to be superfluous or to have been idly inserted" (*Bretton v Mutual of Omaha Ins. Co.*, 110 AD2d 46, 50 [1985, Sullivan, J.], *affd* 66 NY2d 1020 [1985]).

The majority writes that: "the interpretation of paragraph 5 of the [agreement] offered by plaintiff, that [Bayrock's building] will be 'immediately adjacent' to its penthouse (or even the edge of the terrace), is not reasonable. Had the parties intended to give plaintiff the right to block the construction of a building 50 feet away from the edge of the terrace, it is perhaps plausible that they would have referred to that property as being simply 'adjacent' to 'the unit,' whether 'the unit' meant the penthouse alone or the terrace as well. However, it defies logic that they would have added the modifier 'immediately,' which implies an absence of appreciable space between 'the unit' and the structure that is to be 'built.' "

This is pure wordplay, with the majority simply switching one ambiguous phrase for another. The majority holds that the phrase "immediately adjacent" unambiguously excludes a building 50 feet from plaintiff's terrace (the majority implicitly concedes, as it must, that a reasonable construction of the term "unit" in paragraph 5 includes the terrace) because an "appreciable space" exists between the building and plaintiff's unit.

To repeat: the phrase "appreciable space" is no less ambiguous than the phrase "immediately adjacent." The phrase "appreciable space" is unambiguous only if it "has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion" (*Greenfield*, 98 NY2d at 569 [internal quotation marks and citation omitted]). Obviously, it has no such "definite and precise meaning." The majority implicitly concedes the point, even as it writes that I make it "vociferously," by wholly failing to supply a "definite and precise meaning."

The majority claims that it "strains credulity that defendants would have given plaintiff perpetual carte blanche to block potentially lucrative transfers of air rights to developers in the trendy Soho neighborhood where the condominium building is located." This ignores basic economics. The majority ignores the economic reality that the value of the unit defendants were seeking to sell to plaintiff (and thus the amount plaintiff would pay to defendants) would be reduced if defendants *retained* carte blanche to sell all the development and air rights for the building. Thus, only an economics rube would have allowed defendants to retain perpetual carte blanche authority over the sale of air rights that could significantly reduce the value of the property (unit 8, including the terrace) defendants were offering to sell. What makes more sense is precisely what from a plain reading of paragraph 5 apparently did occur: the parties agreed to share the right to transfer the air rights. Whether plaintiff got the better of the deal by becoming an equal partner in those air rights (or, more accurately, in a subset of those air rights, as plaintiff's authorization is not required to the extent other owners of air rights do not want to build in the area "immediately adjacent" to its unit) cannot be determined on this record and is irrelevant in any event. The majority also ignores that a rational party in plaintiff's position would have an economic incentive to agree to a future sale of air rights if its equal share of the sale proceeds exceeded the decline in value of the unit that would result from the transfer of the air rights. Of course, there is no reason to think that defendants ignored that incentive in agreeing to make plaintiff an equal partner with respect to the sale of certain of the air rights (and thus no reason to think that paragraph 5 represents economic folly by defendants).

The majority also writes that: "In any event, an examination of the [agreement] reveals that its clear intention was to transfer to plaintiff the air rights necessary to permit it to

construct an addition to its penthouse apartment. Reading the [agreement] as a whole . . . , it is quite evident that paragraph 5 was included to ensure that defendants would not permit other condominium owners to impede plaintiff's ability to build on the terrace. That no other condominium owner could have built on the terrace due to the terrace's status as a limited common element to which plaintiff had exclusive use does not change the conclusion that paragraph 5 of the [agreement] is not ambiguous. The only alternative meaning which plaintiff ascribes to paragraph 5, that a [building] 50 feet away is 'immediately adjacent' to the terrace, is simply not a reasonable one, and this does not render the provision ambiguous. It is far more reasonable to interpret paragraph 5 as an additional assurance to plaintiff that its right to use the terrace area was inviolate, and that no one could build in the area in which, pursuant to paragraph 1, it was purchasing the air rights" (citation and internal quotation marks omitted).

The majority is able to conclude that as a matter of law the sole intent of the agreement "was to transfer to plaintiff the air rights necessary to permit it to construct an addition to his penthouse apartment," only by effectively reading paragraph 5 out of the agreement. That is exactly what the majority does in reducing paragraph 5 to "an additional assurance to plaintiff that its right to use the terrace was inviolate, and that no one could build in the area in which . . . it was purchasing the air rights." Because plaintiff already had an inviolate right to use the terrace under the "declaration of condominium," this "additional assurance" is vacuous. Moreover, under the majority's construction of paragraph 5, plaintiff would have had no ground for complaint if Bayrock "want[ed] to build in the area" six inches from plaintiff's terrace. Not surprisingly, the majority does not take issue with me on this point. Although the majority pays lip service to the obligation to read the agreement as a whole, it flouts that obligation by rendering paragraph 5 nothing more than surplusage.

Finally, the majority errs in asserting that plaintiff's construction of paragraph 5 "creat[es] an obligation that has nothing to do with plaintiff's plan to expand its living space." The value of the expanded living space that plaintiff was contemplating unquestionably would be affected adversely by, for example, construction of a towering hotel on the adjacent lot. For that reason, just as unquestionably, the obligation plaintiff contends it negotiated for—the obligation the majority reads right out of the agreement—cannot reasonably be divorced from those expansion plans.

445

In sum, the phrase "in the area immediately adjacent to [plaintiff's] unit" is, on its face, reasonably susceptible of more than one interpretation and therefore ambiguous. Because the agreement cannot be construed as a matter of law on this appeal from an order dismissing the complaint on a pre-answer motion to dismiss (*see e.g. Hambrecht & Quist Guar. Fin., LLC v El Coronado Holdings, LLC*, 27 AD3d 204 [2006]; *Hirsch v Food Resources, Inc.*, 24 AD3d 293 [2005]), I would reverse the order dismissing the complaint "with prejudice," reinstate the complaint and remand the matter for further proceedings. [*See* 2007 NY Slip Op 31629(U).]