OPINION OF THE COURT
James A. Yates, J.
This case concerns the commercial affairs and relationships of plaintiff Rubin Schron and various business entities (hereinafter plaintiffs), named in the complaint, which he and his family control. The complaint alleges that several of Schron’s advisors *233 and business associates (hereinafter defendants) undertook to exploit the trust vested in them for their own financial benefit.
Plaintiffs purchased the assets of Mariner Health Care, Inc., a large nursing home company. According to the complaint, Schron, as a real estate investor, was reluctant to enter into the nursing care business. For that reason, the transaction was structured in such a way as to allow Schron to purchase the real estate holdings of Mariner while segregating the management and operations portion of the business into a separate entity which he would not own.
The Mariner transaction was valued at approximately $1.3 billion. Numerous documents were executed in order to bring the transaction to fruition. The two most relevant for the purposes of these motions are the Unit Purchase Option Agreement (the option) and the Term Loan and Credit Facility Agreement (the loan), both originally dated December 10, 2004 and subsequently amended and restated as of June 9, 2006.
The option provides that from the date of the agreement, until June 9, 2011, Cammeby’s Equity Holdings LLC (Cam Equity) has the option to purchase up to 99.999% of all membership units in SVCARE Holdings LLC (SVCARE) for the price of $100 million, which may be paid, at the option holder’s discretion, in cash or assumption and release of then existing indebtedness of SVCARE. In turn, the option holder agrees that if it should subsequently sell its acquired units, it shall only retain up to $400 million of net proceeds and turn any excess over to the issuer, SVCARE. The loan agreement provides for a $100 million term loan funded by Cammeby’s Funding III LLC (Cam Funding III) to SVCARE and its subsidiaries.
Cam Equity has now exercised the option but SVCARE refuses to honor it. The defendants allege that Cam Equity received the SVCARE option in consideration for the $100 million loan and since this loan was never funded, the option is not viable.
Whether the loan was made is a fact in dispute and in the matter of Schron v Grunstein (index No. 650702/10), Cam Equity seeks an order granting a motion in limine (motion sequence No. 006) to exclude parol evidence of whether or not the term loan was a condition precedent to the option and whether it was funded. In Mich II Holdings v Schron (index No. 600736/10), Cam Equity moves to dismiss the fifteenth cause of action (motion sequence No. 002) which seeks declaratory judgment that the option is null and void. The motions are consolidated for disposition.
*234 For the reasons stated below, Cam Equity’s motions are granted.
As an initial matter, defendants argue that the motion in limine is “(1) inappropriate on its face since it seeks to exclude evidence the court has not even seen; (2) clearly premature; and (3) an inappropriate attempt at a disguised summary judgment.” (Defendants’ mem of law in opposition to motion at 8.) However, the central question to be determined by this motion is the legal question regarding the clarity or ambiguity of the option agreement on its face. Defendants cite to cases stating that the function of the motion in limine is “to permit a party to obtain a preliminary order before or during trial” (State of New York v Metz, 241 AD2d 192, 198 [1st Dept 1998]); it is important to note that “in more than two-thirds of the commercial cases in which the issue of ambiguity was considered, the issue arose on motions to dismiss, motions for judgment on the pleadings, or motions for summary judgment,” well before trial. (Haig, Commercial Litigation in New York State Courts § 41:10, at 1185 [2d ed].)
Analysis
The initial issue on these motions is whether the documents being considered are two independent agreements or parts of a singular integrated transaction that requires them to be read jointly.
“[Contracts remain separate unless their history and subject matter show them to be unified (see, Ripley v International Rys., 8 NY2d 430; National Union Fire Ins. Co. v Williams, 223 AD2d 395). The primary standard is the intent manifested, viewed in the surrounding circumstances (see, Rudman v Cowles Communications, 30 NY2d 1, 13). The nature of the obligation undertaken depends upon the parties’ intention, and where that intention may be gathered from the four corners of the instrument, interpretation of the contract is a question of law (see, Bank of Tokyo-Mitsubishi v Kvaerner, 243 AD2d 1).” (Nancy Neale Enters, v Eventful Enters., 260 AD2d 453 [2d Dept 1999].)
“In determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances” (Rudman v Cowles Communications, 30 NY2d 1, 13 [1972] [citations omitted]). However, “in the absence of some clear indication that the parties had a contrary *235 intention, contracts manifesting separate assents to be bound are generally presumed to be separable.” (National Union Fire Ins. Co. of Pittsburgh, Pa. v Clairmont, 231 AD2d 239, 241-242 [1st Dept 1997], citing Ripley v International Rys. of Cent. Am., 8 NY2d 430, 438 [I960].)
In Arciniaga v General Motors Corp. (460 F3d 231 [2d Cir 2006]) the Second Circuit, applying New York law, considered several factors relevant to such a determination: identity of the parties of the two agreements, mutual dependence of the contracts, absence of cross-reference and their different purposes. (Id. at 237.)
Likewise, the First Department held that “separate written agreements involving different parties, serving different purposes and not referring to each other were not intended to be interdependent or somehow combined to form a unitary contract.” (Schonfeld v Thompson, 243 AD2d 343, 343 [1st Dept 1997].)
Moreover, “[although form is not conclusive, that the parties entered into separate written agreements with ‘separate assents’ rather than a ‘single assent’ is influential.” (Rudman at 13.)
The two contracts before this court are separate written agreements with separate assents rather than a single assent. There is only a partial identity between the parties: the loan agreement is by and among SVCARE Holdings LLC, SavaSeniorCare, LLC and Cammeby’s Funding III LLC whereas the option agreement is between SVCARE Holdings LLC, Cammeby’s Equity Holdings LLC and Canyon Sudar Partners LLC. The two agreements serve different purposes: the option agreement gives Cam Equity the option to purchase SVCARE while the loan agreement provides financing from Cammeby’s Funding III LLC to SVCARE and its subsidiaries.
It is true that both agreements were originally executed on the same date, and amended on the same date as well. In other words, the sophisticated parties here, some attorneys themselves, had not one, but two opportunities to attach the loan agreement and/or the option to each other, and incorporate mention of the loan as consideration for the option. Yet both agreements lack express cross-references to each other. Section 6 of the option agreement refers to the “credit facility with Cammeby’s Funding III LLC,” but it neither identifies the loan agreement as the credit facility in question, nor indicates that this credit facility was intended as consideration for the option. *236 On the other hand, section 2.17 (d) of the Amended and Restated Term Loan and Credit Facility Agreement refers to the possibility that the term loans described herein can be extinguished upon the exercise of the option but only in the context of subordination between and among SVCARE and its lender.
Based on these factors and looking at the transaction as a whole, it appears that the two agreements at the time they were entered into by the parties were meant to be separate and independent written agreements.
The Function of the Merger Clause
New York courts addressing the purpose of a general merger provision have agreed that agreements containing such clauses evidence an intent of understanding between the parties that full application of the parol evidence rule is appropriate
“in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing. The merger clause accomplishes this objective by establishing the parties’ intent that the Agreement is to be considered a completely integrated writing [which] . . . precludes extrinsic proof to add to or vary its terms.” (Matter of Primex Intl. Corp. v WalMart Stores, 89 NY2d 594, 599-600 [1997] [citations omitted].)
As the First Department recently emphasized “[mjerger clauses are not mere boilerplate.” (Torres v D’Alesso, 80 AD3d 46, 53 [1st Dept 2010].) For this reason, courts dealing with agreements containing merger clauses rarely admit extrinsic evidence to vary their terms. This generally occurs only when the writing does not evidence all the particulars expected. For example, in Matthius v Platinum Estates, Inc. (74 AD3d 908 [2d Dept 2010]), extrinsic evidence was admissible because the agreement contained a general provision requiring insurance. “Therefore, evidence of the indemnification agreement, which contained specific provisions regarding the amount of insurance to be provided and the parties to be insured, was admissible to resolve these ambiguities.” (Id. at 909.) However, the court observed that the indemnification agreement also “did not vary, alter, or contradict any terms” of the other agreement and remained enforceable. (Id.) Here, the option agreement in this case contains a strict merger clause in section 16 and a no-oral-modification clause in section 14.
Again, unlike in the usual case, where the contract is signed once, the parties here had another opportunity to amend and *237 incorporate the entire scope of the agreement alleged by the defendants. They chose not to do so. Just as in Cornhusker Farms v Hunts Point Coop. Mkt. (2 AD3d 201 [1st Dept 2003]), here the “strict merger clause and no-oral-modification clause establish that it is an integrated writing.” (Id. at 203.)
Admissibility of Parol Evidence
Whether or not a writing is ambiguous is a question of law to be resolved by the courts. (Van Wagner Adv. Corp. v S & M Enters., 67 NY2d 186, 191 [1986].) “A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.” (Greenfield v Philles Records, 98 NY2d 562, 569-570 [2002] [internal quotation marks omitted].)
“[M]ere assertion by a party that contract language means something other than what is clear when read in conjunction with the whole contract is not enough to create an ambiguity sufficient to raise a triable issue of fact.” (Innophos, Inc. v Rhodia, S.A., 38 AD3d 368, 369 [1st Dept 2007].) Contrary to defendants’ contention, there is nothing in the option which requires reference to another document to determine its meaning: Cam Equity can buy SVCARE for $100 million and, by the terms of the option, is permitted to determine the form of consideration to be paid. Defendants receive the right to reap any significant upside that Cam Equity may realize as a result of reselling the business to a third party.
Here, defendants’ argument in favor of ambiguity largely hinges on the fact that the amount of the allegedly related loan and the option price happen to be identical. However,
“extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face . . .
“An analysis that begins with consideration of extrinsic evidence of what the parties meant, instead of looking first to what they said and reaching extrinsic evidence only when required to do so because of some identified ambiguity, unnecessarily denigrates the contract and unsettles the law.” (WWW Assoc. v Giancontieri, 77 NY2d 157, 163 [1990] [internal quotation marks omitted].)
As the Court of Appeals pithily stated, “before looking to evidence of what was in the parties’ minds, a court must give due weight to what was in their contract.” (Id. at 162.)
*238 “Nor is discovery necessary. Any such discovery would simply be an opportunity for plaintiff to uncover parol evidence to attempt to create an ambiguity in an otherwise clear and unambiguous agreement. Unless this Court were to find an ambiguity, such parol evidence would be inadmissible at trial or on a subsequent motion for summary judgment.” (RM Realty Holdings Corp. v Moore, 64 AD3d 434, 437 [1st Dept 2009].)
If commercially sophisticated and counseled parties had intended to make the funding of the loan a condition precedent of their agreement to the option, they could easily have accomplished that purpose by drafting the contractual writings so that one or more of them expressly incorporated the loan by reference. Since the loan is not referenced in the contractual documents at all, much less “referred to and described [therein] . . . so as to [be] identified] . . . beyond all reasonable doubt” (Shark Information Servs. Corp. v Crum & Forster Commercial Ins., 222 AD2d 251, 252 [1st Dept 1995] [internal quotation marks omitted]), the loan cannot be deemed to be incorporated by reference into the option.
The evidence that defendants seek to introduce would modify the terms of the option by requiring additional and new consideration not recited in the option itself. If the loan were specifically named in the contract as consideration, defendants would be free to introduce evidence about its status. However, such is not the case here.
It is true that the recitation of receipt of consideration may be explained or disputed by parol evidence (see Ehrlich v American Moninger Greenhouse Mfg. Corp., 26 NY2d 255, 258 [1970] [“The recitation of receipt of consideration is a ‘mere admission of a fact which, like all such admissions, may be explained or disputed by parol evidence’ ”]). However, in all the cases cited by the defendants, that consideration was already recited in the agreement itself. Therefore, parol evidence was allowed to determine whether or not the transfer of consideration actually occurred. The option agreement contemplates as its consideration the exchange of mutually beneficial covenants. Cammeby’s reserved the option to repurchase the company at a set price, and the defendants received the right to realize any gain from a potential upside that Cammeby’s might receive from thereafter selling it.;
*239 Defendants’ argument that funding of the loan constituted a condition precedent to the validity of the option is likewise inapplicable. As in Torres,
“[t]he rule that the parties to a written contract may orally agree to a condition precedent to the effectiveness of the contract, so that a party must be permitted to prove by parol evidence a claim that the contract never became effective because the condition precedent never occurred (see Hicks v Bush, 10 NY2d 488, 491 [1962]), is not applicable under circumstances such as those presented here.” (80 AD3d at 47-48.)
In Torres, the court refused to vary a real estate contract for the sale of a private home. Here, the parties contracted for the sale of vast commercial and real estate holdings. We are unwilling to adopt a rule, just as the court in Torres, allowing a party to a fully executed, integrated agreement “lacking any financing contingencies or conditions to evade the effect of a broad merger clause clearly intended to extinguish exactly such a claimed oral condition.” (Id. at 54.)
“To make a provision in a contract a condition precedent, it must appear from the contract itself that the parties intended the provision so to operate (22 NY Jur 2d, Contracts § 262). A contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition. For such a condition to exist it must be apparent from the contract itself that this was the intention of the parties.” (Id. at 57 [internal quotation marks, citation and brackets omitted].)
Conclusion
For the reasons stated, it is hereby: ordered that the motion to dismiss pursuant to CPLR 3211 (a) (1) in the Mich II Holdings LLC v Schron matter (index No. 600736/10) is granted and the fifteenth cause of action of the complaint is dismissed; and it is further ordered that the motion in limine in the Schron v Grunstein matter (index No. 650702/10) is granted; and is further ordered that the defendants in the Schron v Grunstein matter, (index No. 650702/10) are precluded from offering any extrinsic evidence in the adjudication of claim 15 in the amended verified complaint, concerning Cam Equity’s right to enforce the SVCARE option.